MELINDA HAAG (CABN 132612)
United States Attorney

J. DOUGLAS WILSON (DCBN 412811)
Chief, Criminal Division

ACADIA L. SENESE (CABN 251287)
STEPHEN J. MEYER (CABN 263954)
ANDREW M. SCOBLE (CABN 124940)
W.S. WILSON LEUNG (CABN 190939)
Assistant United States Attorneys

　　450 Golden Gate Avenue, Box 36055
　　San Francisco, California 94102-3495
　　Telephone: (415) 436-6809
　　FAX: (415) 436-6753
　　acadia.senese@usdoj.gov

Attorneys for the United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| UNITED STATES OF AMERICA, | ) | CASE NO. 12-CR-0119-SI |
|---|---|---|
| v. | ) ) ) | GOVERNMENT'S PRETRIAL STATEMENT |
| JOSEPH ORTIZ, ET AL., | ) ) | |
| Defendant. | ) ) ) ) | Date: March 18, 2014<br>Time: 2:00 pm<br>Court: Hon. Susan Illston |

## I.   INTRODUCTION

The government respectfully submits this Pretrial Statement to apprise the Court and Counsel of the status of its case in anticipation of the upcoming jury trial scheduled to being with jury selection on April 1, 2014, and opening statements and the presentation of evidence on April 7, 2014. There are expected to be three defendants remaining in the case for trial – Victor Flores, Benjamin Campos-Gonzalez, and Mario Bergren – since the other two remaining defendants in the case have expressed a desire to enter a change of plea. The government expects the trial to last approximately two months.

## II. STATEMENT OF THE CASE

### A. INDICTMENT

The Grand Jury returned the thirty-three count Second Superseding Indictment on July 31, 2012. Victor Flores is charged in Counts One to Three, Ten to Eighteen, and Thirty to Thirty-Three. Benjamin Campos-Gonzalez is charged in Counts One to Three, Ten to Eighteen, and Twenty-Three to Twenty-Seven. Mario Bergren is charged in Counts One to Four.

The government is not seeking the death penalty in this case. Victor Flores and Benjamin Campos-Gonzalez face mandatory life in prison if they are convicted of murder in aid of racketeering. Mario Bergren faces up to life in prison.

### B. CUSTODY STATUS

All of the defendants are in the custody of the United States Marshals.

### C. INTERPRETER

The government does not anticipate the need for any interpreters for the defendants in this trial. Should a government witness require an interpreter, the government will arrange to have an interpreter on the day of the testimony.

### D. JURY WAIVER

The defendants have not waived a trial by jury. The government submitted a proposed Jury Questionnaire under separate cover.

### E. STIPULATIONS

The government and the defendants have not entered into any stipulations. The government will seek certain stipulations designed to streamline the trial with respect to uncontroversial issues, such as records custodians and chain of custody, among others.

### F. DISCOVERY

The government has complied, and will continue to comply, with its discovery obligations.

## III. SUMMARY OF THE FACTS

The following is a brief summary of the facts related to each count. The summary is not an exhaustive recitation of the evidence, but is intended to provide a brief synopsis of what the government expects to prove at trial in order to assist the Court in understanding any issues which may arise in

pretrial litigation or during trial.  The bulk of the government's case will focus on the following seven counts, although other minor events, such as specific instances of the possession of firearms, will also be presented:  1) On or about February 20, 2010, Mario Bergren was involved in an altercation with rival gang members in which he shot at the victims' vehicle;  (2) On or about March 26, 2010, Mario Bergren shot into a home which belonged to a perceived rival gang member; (3) On or about April 5, 2010, Benjamin Campos-Gonzalez was involved in the armed robbery of a jewelry store; (4) On or about April 9, 2010, Benjamin Campos-Gonzalez was involved in the armed robbery of a 7-Eleven; (5) On or about December 18, 2010, non-trial defendant Joseph Ortiz shot at four people whom he perceived to be rival gang members, wounding three of them; (6) On or about December 22, 2010, Benjamin Campos-Gonzalez, Victor Flores, and others shot at seven people whom they perceived to be rival gang members, killing three of them and wounding three others; and (7) On or about May 3, 2012, Victor Flores shot and seriously wounded three federal agents who were executing a "high-risk" arrest warrant at Victor Flores' home.

The government anticipates using a variety of types of evidence in its case-in-chief, including, but not limited to, testimony of expert, law enforcement, civilian, and cooperating witnesses; forensic evidence such as fingerprint, gunshot residue, and tool mark analysis; state and federal wiretap evidence; recordings of jail calls; gang indicia seized during searches of jail cells and residences; evidence obtained from a search warrant executed on Facebook accounts; photographs; various firearms seized by law enforcement; and surveillance videotape footage.

> A. Victor Flores, Benjamin Campos-Gonzalez and Mario Bergren Participated in a Racketeering Enterprise

The government expects to call a gang expert, other law enforcement officers, cooperators, and civilian witnesses to establish the existence of the *Nuestra Familia* organization and the 500 Block/C Street Gang.  The government also expects to introduce photographs, kites (jail messages), Facebook pages, and wiretap evidence to demonstrate the existence of the racketeering enterprise and each defendant's membership in it.  The government expects the above-described testimony to establish that *Norteño* street gangs fall under the umbrella of and follow the directives of the *Nuestra Familia* prison gang.  It is anticipated that the gang expert will testify regarding these gangs' origins, structure, signs,

graffiti, tattoos, colors and symbols claimed by the gang, area of influence, and rules. The government also expects to establish that gang members of the enterprise would violently attack and even kill rival gang members and associates, including *Sureño* gang members and members of the Cypress Park Locos gang (a *Norteño* gang), in order to preserve their territory, reputation, power, and control over their "hood" and their profitable criminal activities. The government expects that the testimony will demonstrate that members of the enterprise engaged in, *inter alia*, murder, drug dealing, robberies, witness tampering, and other acts of violence. The government also anticipates that the evidence will demonstrate that Victor Flores, Benjamin Campos-Gonzalez, and Mario Bergren are each 500 Block/C Street gang members.

### B. Mario Bergren Shot At Rival Gang Members

A witness is expected to testify that on February 20, 2010, Mario Bergren shot at rival gang members. S/he will testify that s/he was a passenger in the defendant's vehicle (a Mustang) when the defendant got into a car pursuit with another vehicle (a Ford Explorer), which was occupied by rival gang members. The Ford Explorer pursued the defendant, and while he was driving, the defendant reached under his seat and retrieved a .25-caliber pistol. According to the witness, someone from the Ford Explorer fired roughly five shots at the defendant's vehicle, at which point the defendant reached over the top of the roof of his car and fired two shots at the Explorer. Law enforcement witnesses will testify that they eventually seized the Ford Explorer, saw bullet holes in the Ford Explorer, and retrieved a fired copper bullet jacket from the vehicle. They also retrieved four .25-caliber cartridge cases from the crime scene.

A witness is also expected to testify that on March 26, 2010, Mario Bergren retrieved a gun from the trunk of his mother's Mercedes Benz vehicle and placed the gun in his pants pocket. He walked with the witness to the intersection of Railroad Avenue and Magnolia Avenue in South San Francisco, where they parted ways. Before they split up, the defendant met up with two young Hispanic males, who approached the defendant and told him, "These fools moved in up here." The defendant, accompanied by the two Hispanic males, walked north on Magnolia Avenue. Less than two minutes later, the witness heard what sounded like two gunshots. The next day, the defendant told the witness

that he had shot into the house "for the cause." Law enforcement officers who responded to the scene recovered a .25-caliber bullet from the family room of the house located at 603 Baden Avenue.

An expert witness will testify that he analyzed the bullets and cartridge cases retrieved from both crime scenes, and that the same gun fired the bullet recovered in the February 20, 2010 shooting and the bullet recovered in the March 26, 2010 shooting.

### C. Benjamin Campos-Gonzalez Committed Two Robberies

On April 5, 2010, Benjamin Campos-Gonzalez and Joseph Ortiz robbed a jewelry store. Joseph Ortiz and Benjamin Campos-Gonzalez entered the jewelry store with their faces covered. Joseph Ortiz pointed a gun at the victims, yelled at the victims, and threatened to kill them. The victims handed over jewelry. The victims will testify that approximately $62,500 worth of jewelry was taken from the store during the robbery. The government also intends to introduce the surveillance video which depicts the robbery and photos which depict the jewelry store. The government expects to call the victims, law enforcement witnesses, and a cooperator to prove that Benjamin Campos-Gonzalez committed this robbery.

On April 9, 2010, Benjamin Campos-Gonzalez drove Joseph Ortiz and a cooperating witness to a 7-Eleven in Pacifica, California. While Benjamin Campos-Gonzalez and the cooperating witness waited in the car, Joseph Ortiz entered the store, pulled out a gun, pointed it at the victim, and threatened, "Give me the money or I'll shoot you." The victim opened the cash register drawer and Ortiz grabbed the money. Ortiz also demanded the victim's wallet and took cash from the wallet. Joseph Ortiz left the store and reentered the awaiting getaway car driven by Benjamin Campos-Gonzalez. The government intends to introduce the surveillance video which depicts the robbery and photos which depict the 7-Eleven store. The government expects to call the victim, law enforcement witnesses, and a cooperating witness to prove that Benjamin Campos-Gonzalez and Joseph Ortiz committed this robbery.

### D. December 18, 2010 Attempted Murders

On December 18, 2010, Joseph Ortiz shot at and attempted to kill four individuals whom he perceived to be rival gang members. He walked up to a vehicle in the parking lot of the St. Francis Liquor Store in Daly City, California and opened fire at the passengers as the car was driving through the parking lot. He wounded three of them, including a female in the front seat of the vehicle suffered

5

multiple gunshot wounds, including a bullet grazing her face. All of the victims survived. Joseph Ortiz was accompanied at the liquor store by a cooperating witness, who will testify to his/her observations that evening.

### E. Victor Flores and Benjamin Campos-Gonzalez Killed Three People

On December 22, 2010, Benjamin Campos-Gonzalez, Victor Flores, Joseph Ortiz, and non-trial defendant Justin Whipple drove into rival gang territory in a Chevrolet Impala and opened fire on seven individuals who were walking down a small alley. They killed three victims and wounded three others. Benjamin Campos-Gonzalez was the driver of the vehicle, and he did not fire a gun. Victor Flores and Joseph Ortiz were passengers in the vehicle, and both fired guns at the victims.

The government expects to call various expert witnesses who will testify, among other things, that (1) the cause of death for the three victims was gunshot wounds and the manner of death was homicide; (2) that Victor Flores' DNA was recovered from the Chevrolet Impala and that his fingerprint was recovered from a newspaper (dated December 22, 2010) found in the vehicle; (3) that the Chevrolet Impala had gunshot residue on three of the four door panels; and (4) cell site data links the defendants to the vicinity of the murders at the time of the murders. Additionally, the government expects to call various other witnesses, including cooperators, who will testify to various admissions made by the defendants with respect to their roles in the triple homicide, and who will describe the firearms which were used in the murders. The government will also rely upon state and federal wiretap evidence to prove this crime.

### F. Victor Flores Shot and Wounded Three Federal Agents

On May 3, 2012, law enforcement personnel served a "high-risk" arrest warrant at Victor Flores' residence. Members of Homeland Security's Special Response Team ("SRT") arrived at the house at approximately 4:00 a.m.. They approached the front door of the residence. They "knocked and announced" their presence, they waited at least five to eight seconds, and – after no response – they breached the front door. Soon after they entered the residence, Victor Flores opened fire. Using an AK variant assault weapon that fired large-caliber rifle rounds, Flores unloaded an entire 10-round magazine of ammunition at nearly point-blank range at the agents. After emptying the magazine, he reloaded his assault rifle, and emptied a second 10-round magazine of ammunition at the agents. In this shooting,

Victor Flores seriously wounded three agents. One of them was critically injured. That agent just underwent his fifth surgery towards his recovery.

After running out of ammunition, Victor Flores surrendered. He and his family members were taken into custody unharmed. After his arrest, Victor Flores admitted that he shot the agents.

**IV.    PERTINENT LAW**

Please refer to the government's proposed Jury Instructions filed under separate cover for the elements of the offenses charged.

**V.    WITNESS LIST**

Given the nature of this case, and the ongoing security concerns for witness safety in this case, the government will provide a copy of its witness list to defense counsel pursuant to the "Protective Order Dated March 10, 2014" in this case. The government will also provide a copy of the Witness List to Chambers.

**VI.    EXHIBIT LIST**

Given the nature of this case, and the ongoing security concerns for witness safety in this case, the government will provide a copy of its Exhibit List to defense counsel pursuant to the "Protective Order Dated March 10, 2014" in this case. The government will also provide a copy of the Exhibit List to Chambers.

**VII.    PROPOSED VOIR DIRE**

On March 10, 2014, the government filed under separate cover a proposed jury questionnaire, which incorporated the Court's rulings at the hearing that morning.

**VIII.    JURY INSTRUCTIONS**

As stated above, the government will submit its proposed jury instructions under separate cover.

DATED: March 13, 2014

MELINDA HAAG
United States Attorney

By:    /s/
ACADIA L. SENESE
STEPHEN J. MEYER
ANDREW M. SCOBLE
W.S. WILSON LEUNG
Assistant United States Attorneys