IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>VICTOR FLORES, et al.<br><br>　　　　　Defendants.<br>_____/ | No. CR 12-00119 SI<br><br>**ORDER GRANTING MOTION TO CONTINUE TRIAL** |

On March 28, 2014, the Court heard oral argument on the motion to continue trial date brought by defendants Benjamin Campos-Gonzalez and Victor Flores, and joined by defendant Armando Acosta. Having considered the arguments of counsel and the papers submitted, the Court GRANTS defendants' motion and continues the trial to June 23, 2014.

## BACKGROUND

The events underlying this RICO gang case began in 2010. The government began its official prosecution in early 2012 when it indicted the original named defendant. On April 24, 2012, the government filed a superseding indictment, charging nineteen defendants. On July 31, 2012, the government filed a second superseding indictment, adding charges against several of the nineteen defendants. Since that time, fifteen defendants have pleaded guilty. The four remaining defendants are scheduled for trial, with jury selection beginning on March 31, 2014, and opening statements on April 7, 2014.

During the years prior to March, 2014, the government produced to defendants hundreds of thousands of documents, 15,800 audio recordings (primarily wire tap recordings) and 100 videos. However, because of significant safety concerns for the witnesses involved, many of these documents were heavily redacted, with names and identifying information excluded. A Coordinating Discovery Attorney, appointed by the Court, has assisted defense counsel in electronically organizing the documents received and maintaining a database which will allow for use of the materials at trial. To the extent that names and identifying information were redacted, these documents were of limited utility for organizational purposes.

As trial approached, the government agreed to produce pretrial discovery and disclosures – without redactions – by March 3, 2014. Due to ongoing settlement discussions, and pursuant to stipulations between the parties, that date was moved to March 5, 2014. On March 6, 2014, the government turned over Jencks Act and *Giglio* material to Victor Flores and Mario Bergren. On March 10, 2014, the government turned over the same types of material to Benjamin Campos-Gonzalez. Campos-Gonzalez asserts that the production was delayed because he was in settlement talks with the government until that date. *See* Defendants' Motion to Continue Trial Date ("Defs.' Mot.") at 2 n.1. On March 13 and 17, 2014, the government turned over additional discovery. *Id.* On March 21, 2014, the government supplemented its expert disclosures. *Id.* As of March 28, 2014, counsel for Armando Acosta had not yet received the additional productions, because of continued, ultimately unsuccessful plea negotiations until March 26, 2014.

The Coordinating Discovery Attorney supplied a declaration stating that "larger discovery productions (5,000 to 10,00 pages)" can take several weeks to input meaningfully into the system. She states that 8,900 pages of information were produced in March, including "hundreds of duplicates" and "documents, media and native files without bates numbers," all of which requires individual inspection, processing, coding and filing. Further, matching the newly unredacted documents to the previously-produced redacted ones is labor intensive and time consuming. She estimates that she will have the discovery in the data base by April 1, 2014 – currently the first day of jury selection.

The defendants now move to continue the trial date on the grounds that the April 7, 2014 start date for opening statements does not give them time to adequately process and investigate the

2

government's March 2014 discovery and disclosures. They further argue that the telephone companies' intransigence in complying with defense subpoenas leaves them insufficient time to determine whether to move to suppress related evidence.

**LEGAL STANDARD**

The trial court has broad discretion in determining whether to continue a trial. *See United States v. Tham*, 960 F.2d 1391, 1396 (9th Cir. 1991). That determination will only be disturbed if it is "arbitrary and unreasonable" upon the consideration of four factors: "(1) the extent of the defendant's diligence in readying the defense; (2) the likelihood that the continuance [will] satisf[y] the defendant's need; (3) the inconvenience to the court, opposing party, and witnesses; and (4) the extent to which the defendant may [be] harmed." *Id.*

**DISCUSSION**

The defendants argue that, given the volume of discovery and disclosures that have been produced to them over the last few weeks, and the additional information they expect to receive from the telephone companies, a six-week continuance is warranted to provide them sufficient time to review and investigate the material. They contend that, without this additional time, their counsel will not be adequately prepared to represent them at trial. For the following reasons, the Court concludes that the defendants have demonstrated that a continuance is warranted.

**1.      Recent Discovery Productions.**

The defendants argue that they cannot adequately review and investigate the government's recent discovery and disclosure productions in advance of the current trial date. On March 6 and 10, 2014, the government produced Jencks Act and *Giglio* material to the defendants. The defendants contend that these productions contained thousands of pages of discovery they had never before seen, and disclosed the identities of previously unknown witnesses.

Defendants concede that the government was not statutorily required to produce this material at this date, Defs.' Mot. at 2, so it cannot be said that the production was untimely. It was, however,

3

made at a time and in a manner which made its review within the time left to trial impossible as a practical matter. The production of many isolated pages of unredacted discovery slows the process of reviewing, coding and processing the documents, which in turn delays any necessary follow-on investigation.

The charges in this case are serious, may result in sentences of mandatory life in prison without parole, and will revolve around numerous shootings and three murders. It is not fundamentally fair, either to defendants or to the victims in this case, who will be required to participate in or watch the trial, to require the trial to proceed under circumstances where material which has been available to the prosecution since the beginning of the case has not been properly reviewed by the defense, through no fault of its own. Legal and factual mistakes are inevitable under such circumstances.

**2.    Production of Witness List.**

The defendants also argue that they cannot adequately investigate and prepare to cross examine the government's witnesses in time for trial, given the great length of the witness list. They contend that meaningful investigation of the government witnesses could not begin until they had access to the identities and statements of the witnesses, previously unavailable because of the substantial redactions in the material produced originally. The government has stated that its current witness list is substantially over-inclusive and that it will provide the defendants with a list of the witnesses it expects to call, and the order in which it expects to call them, which will assist in the efficient trial of the matter. However, necessary investigation cannot be competently commenced until the newly-produced, newly-unredacted documents – including witness statements and reports – have ben reviewed.

**3.    Impact on Witnesses.**

The government's strongest argument against a continuance is the impact it will have on civilian witnesses. Witnesses' memories fade over time. More importantly, this case involves many cooperating witnesses whose identity was, until recently, concealed pursuant to a protective order. Now that those identities have been revealed to defense counsel, albeit under the terms of a protective order, these witnesses face greater risks to their personal safety. Continuing the trial prolongs the time period for

4

which these witnesses are exposed to such risk. The Court is mindful of these concerns, and takes them seriously. However, the concerns must be balanced against the constitutional requirements of fairness and effective representation for defendants charged with crimes.

**4.     Inconvenience to the Opposing Party and to the Court.**

In determining whether to grant a continuance, the Court may also consider the impact a continuance would have on the government, and on the Court itself.

A continuance will be inconvenient for the Court, which has struggled to keep its calendar relatively clear for this lengthy trial. It will also be inconvenient for the government, which has arranged for many witnesses to be available for trial, some with special security arrangements.

However, as was discussed at the hearing today, there are some things which can be done to ameliorate the inconvenience, and perhaps reduce the length of the trial. Counsel have discussed – but apparently have not had time to finalize – various stipulations (re authenticity, etc.) which could apparently reduce the number of witnesses required to be called by substantial numbers. The delay occasioned by the continuance can be used to streamline the ultimate trial.

**5.     Telephone Company Records.**

Defendants also argue that the telephone companies' delays in complying with defense subpoenas merit a continuance because the defendants have still not had the opportunity to review these documents and determine whether to bring a *Franks* motion.

The Court recognizes the difficulty, and the delays, the defendants have faced in attempting to obtain these records. As to MetroPCS, the subpoena was served in December, 2013, and MetroPCS's motion to quash was denied on February 10, 2014. However, it was not until March 27, 2014, that MetroPCS produced the requested documents. The defendants are still waiting for AT&T to comply with the subpoena the Court authorized on March 13, 2014, seeking additional information. The defendants expect these additional materials to be produced on April 8, 2014.

While this delay would not by itself warrant a continuance, the additional time will allow the defendants to receive all the information provided, review it, and determine whether they still believe that a *Franks* motion is merited.

**CONCLUSION**

For the foregoing reasons and for good cause shown, and on the basis of the record before it, the Court hereby GRANTS defendants' motion to continue the trial date.

As counsel are aware, the current trial schedule took into account the fact that the Court would be unavailable at certain times during the trial period.[1] This required a week-and-a-half hiatus in May and a potential week-and-a-half hiatus in June. In order to avoid both of these discontinuities, the Court will schedule the trial to start on June 23, 2014. It will still be necessary to take off one week – July 14, 2014 - July 17, 2014 – during the trial, but the overall inconvenience to the jury and the parties will be reduced. The Court finds that excluding from the speedy trial clock the time from April 1, 2014 to June 23, 2014 is necessary to counsel's effective preparation of this complex case for trial.

**IT IS SO ORDERED.**

Dated: March 28, 2014

SUSAN ILLSTON
UNITED STATES DISTRICT JUDGE

---

[1] The prior trial days were scheduled as follows:
April 7, 8, 9 and 10, 2014
April 14, 15, 16 and 17, 2014
April 21, 22, 23 and 24, 2014
April 28 and 29, 2014
May 12, 13, 14 and 15, 2014
May 19, 20, 21 and 22, 2014
May 26, 27, 28 and 29, 2014
June 2, 3, 4 and 5, 2014
June 9 and 10, 2014.
The Court was unavailable from April 30, 2014 - May 11, 2014. Further, the Court will be unavailable from June 11 - June 20, 2014. Thus, should the trial have gone longer than counsel expected, it would have resumed June 23, 2014.

6