IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>VICTOR FLORES, et al.,<br><br>    Defendants.<br>_____ / | No. CR 12-00119 SI<br><br>**ORDER DENYING MOTION TO SUPPRESS WIRETAP EVIDENCE** |

On June 18, 2014, the Court heard argument on defendants' motion to suppress wiretap evidence. *See* Dkt. No. 1034. Having considered the arguments of counsel and the papers submitted, the Court hereby DENIES the motion.

**BACKGROUND**

The parties are well aware of the factual details of this case, and the Court will therefore not repeat them here. At issue in this motion is a set of state wiretaps acquired and used by law enforcement in the investigation of this case.

On April 29, 2011, Detective Gregg Oglesby obtained the signature of Judge Grandsaert of the San Mateo Superior Court for wiretap authorization 11-01. Declaration of Gregg Oglesby in Support of Government's Opposition to Motion to Suppress Wiretap Evidence ("Oglesby Decl.") ¶ 3. Because data were to be intercepted from a San Francisco location, it was also necessary to

obtain the signature of Judge Breall, a San Francisco-based judge. Declaration of Wayne Ross in Support of Government's Opposition to Motion to Suppress Wiretap Evidence ("Ross Decl.") ¶ 3. On May 2, 2011, Detective Oglesby obtained Judge Breall's signature on wiretap authorization 11-01. Oglesby Decl. ¶ 3. Wiretap 11-01 encompassed ten target telephones. *Id.* ¶ 4. On May 3, 2011, Wire Room Manager Wayne Ross faxed copies of the 11-01 wiretap authorization to Metro PCS, AT&T, Cingular, T-Mobile, and Sprint. Ross Decl. ¶ 6. At some point prior to May 4, 2011, Wayne Ross learned that there was a problem with target telephone #4, believed to be used by Armando Acosta. *Id.* ¶ 7; Oglesby Decl. ¶ 5(b). Metro PCS determined that it could not comply with wiretap 11-01 because it did not service the phone number for target telephone #4. Ross Decl. ¶ 7. At the same time, Detective Oglesby, in consultation with Chief DDA Karen Guidotti, decided to replace target telephone #8 with a new one believed to be used by Benjamin Campos-Gonzalez. Oglesby Decl. ¶ 6.

On May 4, 2011, Detective Oglesby prepared a new wiretap application, also entitled 11-01, and presented it to Judges Grandsaert and Breall. *Id.* ¶ 6(a). Both judges signed the new version of 11-01 that same day. *Id.* On May 5, 2011, Wayne Ross faxed a copy of the revised 11-01 wiretap authorization to Metro PCS and to Sprint. Ross Decl. ¶¶ 7-8.

No interception of any kind, on any of the target telephones, took place prior to the judges signing the revised 11-01 wiretap authorization. *Id.* ¶ 10. On May 4, 2011, data interception began for target telephones 1, 3, 5, 6, 9, and 10. *Id.* ¶ 11. On May 5, 2011, data interception began for target telephones 2, 4, 7, and 8. *Id.* No audio interception, on any of the target telephones, took place before May 6, 2011. *Id.* ¶¶ 10-11.

On May 12, 2011, Detective Oglesby sought and obtained wiretap 11-02 from Judges Grandsaert and Breall, covering target telephone #11. *See id.* ¶ 12. Interception under 11-02 began on May 12, 2011, and lasted until June 3, 2011. *Id.* ¶¶ 12-13. On May 12-13, 2011, the same two judges authorized wiretap 11-03, covering target telephone #12. *Id.* ¶ 13. Interception under 11-03 began on May 13, 2011, and lasted until June 3, 2011. *Id.* ¶¶ 14-15.

Monitoring for all target telephones ended on June 2, 2011, although the wiretaps continued to receive data on four of the twelve target telephones until June 3, 2011. *Id.* ¶¶ 11, 13, 15. On Friday June 3, 2011, Wayne Ross removed the recordings of all wiretap information, made a set of CDs, and

presented them to Detective Oglesby. *Id.* ¶ 16. Detective Oglesby spent June 3, 2011 "assembling and reviewing all the relevant call data and drafting the final Ten-Day Report and cleaning out the Wire Room." Oglesby Decl. ¶ 10. On Monday June 6, 2011, Detective Oglesby transported all evidence to the San Mateo County Superior Court, where he met with Judge Grandsaert and had all the wiretap evidence sealed.

## LEGAL STANDARD

A wiretap order should only issue where the government can demonstrate: (1) probable cause that an individual has committed, is committing, or will commit an enumerated offense; (2) probable cause that communications regarding that offense will be intercepted; and (3) that ordinary investigative techniques have been or will be unsuccessful. 18 U.S.C. § 2518(3)(a)-(c). An application for a wiretap must include "a full and complete statement of the facts and circumstances" justifying the need for the wiretap; including the offenses committed, a description of the facilities from which the communications will be intercepted, a description of the types of communications anticipated, and the identities of the individuals who committed the offenses or whose communications are sought, if known to the affiant. *Id.* § 2518(1)(b).

Wiretap evidence procured in violation of Title III may be suppressed. *See United States v. Staffeldt*, 451 F.3d 578, 580 (9th Cir. 2006). Title III enumerates three types of statutory violations that merit suppression: (1) an unlawful interception of communications; (2) an application or wiretap order that is insufficient on its face; and (3) an interception "not made in conformity with the order of authorization or approval." *Id.* (quoting 18 U.S.C. § 2518(10)(a)). However, suppression is not warranted for every failure to comply fully with Title III's requirements. *See United States v. Chavez*, 416 U.S. 562, 574-75 (1974). Instead, a court is required to suppress evidence only for "failure to satisfy any of those statutory requirements that directly and substantially implement the congressional intent to limit the use of intercept procedures to those situations clearly calling for the employment of this extraordinary investigative device." *United States v. Donovan*, 429 U.S. 413, 433-34 (1977) (quoting *United States v. Giordano*, 416 U.S. 505, 527 (1974)).

3

**DISCUSSION**

Defendants raise four arguments in favor of suppressing the wiretap evidence: (1) wiretap application 11-01 contained misstatements and omissions, and therefore lacked particularity; (2) the two different versions of wiretap 11-01 caused interception outside the mandated 30-day period, in violation of 18 U.S.C. § 2518(5); (3) the 11-01 wiretaps were not timely sealed, in violation of 18 U.S.C. § 2518(8)(a); and (4) the government failed to inform the court that the necessity for the 11-01 wiretap ended before the termination date of the wiretap. The Court shall address each argument in turn.

**1. Particularity of the 11-01 Wiretap Applications.**

Defendants argue that both versions of the 11-01 wiretap application contained material misstatements and omissions that resulted in a lack of particularity, necessitating suppression of the wiretap evidence. Specifically, defendants point to the errors relating to target telephones four and eight contained in the first version of 11-01, and the "porting" of target telephone five from one phone number to a different phone number with the same ESN. Defendants also argue again that the omission of ESNs from the wiretap applications results in a lack of particularity.

As a preliminary matter, the Court has previously addressed the issue of particularity in the context of the omission of ESNs, in response to defendants' facial challenge to the validity of the wiretap applications. *See* Dkt. No. 846. The Court noted that established Ninth Circuit law holds that ESN numbers are not necessary for a wiretap application to describe the facility to be tapped with the requisite particularity. *See id.* at 9. The Court will not revisit the issue here.

With regard to the errors relating to target telephones four and eight in the May 2, 2011 version of 11-01, those errors were recognized and corrected in the May 4, 2011 version of 11-01. *See* Ross Decl. ¶ 7-8; Oglesby Decl. ¶ 6. Target telephones four and eight were only tapped pursuant to the May 4, 2011 version of 11-01. Ross Decl. ¶¶ 7-8. Accordingly, those errors did not render the wiretap invalid for lack of particularity.

With regard to the "porting" of target telephone five from one phone number to a second phone number but with the same ESN, the Court finds that this action does not indicate a lack of particularity

1 in the wiretap application. Defendants argue that, because no ESN was provided for target telephone
2 five, there is no way to determine whether the changed phone number was actually associated with the
3 same ESN as the original phone number. They contend that this lack delegated too much authority to
4 law enforcement to decide which phones to tap.

5 The Court is persuaded by the detailed declaration of the Wire Room Manager that the lack of
6 an ESN neither violates the particularity requirement, nor delegates too much authority to law
7 enforcement. *See* Ross Decl. ¶ 4. Once the telephone service provider receives the wiretap
8 authorization, the service provider then implements the order as it is drafted. *Id.* If the authorization
9 permits the service provider to change the tap from one phone number to another, provided the ESN
10 remains constant, the service provider is the entity that makes the switch. *Id.* Indeed, law enforcement
11 has no capability of making such a determination or performing such a switch. *Id.* It is only the service
12 providers – the entities that know which ESN is associated with which phone number – that are
13 equipped to effectively implement such a wiretap. *See id.*

14 The Ninth Circuit has declined to mandate suppression of evidence where the wiretap order
15 permitted monitoring of any phone number that became associated with a particular ESN, *see United*
16 *States v. Oliva*, 705 F.3d 390, 401 (9th Cir. 2012), as well as where law enforcement monitored a device
17 with the same telephone number but a different ESN, *see Duran*, 189 F.3d at 1083. Neither the
18 omission of ESN numbers, nor the ability of the service providers to switch the taps in conformity with
19 the wiretap authorization render 11-01 invalid.

20 Therefore, to the extent defendants rely on these supposed violations as a basis for dismissal, the
21 motion is DENIED.

22

23 **2.** **Compliance With the Thirty-Day Requirement.**

24 Defendants next argue that, due to the two versions of the 11-01 wiretap authorization,
25 interception took place for more than thirty days, in violation of Title III.

26 A wiretap must terminate when the objectives of the investigation are achieved, or thirty days
27 after interception begins, whichever comes first. *See* 18 U.S.C. § 2518(5). According to the records
28 of the wiretaps, the earliest session in which data was intercepted was on May 4, 2011, at approximately

5

4:13 p.m. *See* Ross Decl. ¶ 11(c). Thus, to comply with the statute, monitoring on all tapped phones must have ceased within thirty days of that interception. Thirty days from May 4, 2011 at 4:13 p.m. is June 3, 2011 at 4:13 p.m. The final interception that took place on any of the tapped phones was on June 3, 2011 at approximately 1:27 p.m., within the permissible thirty-day window. *See* Ross Decl. ¶ 11(b). Accordingly, the Court finds that no interceptions took place outside the mandated thirty days. To the extent defendants rely on this supposed violation as a basis for suppression, the motion is DENIED.

### 3.     Compliance With the Sealing Requirement.

Defendants next argue that the evidence obtained from the 11-01 wiretap must be suppressed because the government delayed too long in sealing the recordings.

Once a wiretap authorization has expired, the government must immediately present any recordings to the issuing judge for sealing. 18 U.S.C. § 2518(8). "Immediately" has been interpreted to mean "within one or two days." *United States v. Pedroni*, 958 F.2d 262, 265 (9th Cir. 1992) (quoting *United States v. Vazquez*, 605 F.2d 1269, 1278 (2d Cir. 1979), *cert. denied*, 444 U.S. 981 (1979)).

Here, interception ceased on Friday June 3, 2011. *See* Oglesby Decl. ¶ 10. Detective Oglesby spent the remainder of that day "assembling and reviewing all the relevant call data and drafting the final Ten-Day Report and cleaning out the Wire Room." *Id.* On Monday June 6, 2011, the next business day, Detective Oglesby presented the wiretap evidence to Judge Grandsaert for sealing. *Id.* Courts have recognized that weekends present a reasonable excuse for slight delays in sealing. *See Pedroni*, 958 F.2d at 264 n.1 (delay excused where tapes were sealed six days after the termination of surveillance because the "surveillance terminated on Thursday" and the "agents did not begin preparing the tapes for sealing until the following Monday because Friday was Good Friday and the agents did not work on the weekend"); *United States v. Wong*, 40 F.3d 1347, 1375 (2d Cir. 1994) ("We have recognized that weekends and holidays present legitimate obstacles to the sealing of tapes."); *United States v. Maxwell*, 25 F.3d 1389, 1394 (8th Cir. 1994) ("Intervening weekends . . . are satisfactory explanations for slight delays in presenting wiretap recordings for sealing."); *United States v. Carson*, 969 F.2d 1480, 1498 (3d Cir. 1992) ("When the intervening weekend is considered, there is no

6

1 indication in the record that the tapes were not sealed as soon as was practical."). The Court finds that
2 the slight delay over the weekend – from Friday June 3, 2011 until Monday June 6, 2011 – was an
3 excusable delay in sealing that did not violate the statutory mandate that records be sealed
4 "immediately."

5 Accordingly, to the extent defendants rely on this supposed violation as a basis for suppression,
6 the motion is DENIED.

**4. Termination of Necessity for Wiretaps.**

Finally, defendants argue that the evidence obtained from the wiretaps must be suppressed because law enforcement failed to inform the issuing judge that they had begun speaking to an informant in the case, thus terminating the necessity for the wiretaps to continue. Specifically, defendants contend that, no later than May 11, 2011, an informant[1] had come forward with some information regarding the December, 2010 shootings which were the subjects of the wiretap investigation.

Both federal and California law require law enforcement to present reports to the judge who issues a wiretap order. *See* 18 U.S.C. § 2518(6); Cal. Penal Code § 629.60. Federal law requires reports demonstrating the progress made toward achievement of the investigative goals, and "the need for continued interception." 18 U.S.C. § 2518(6). California law requires reports setting forth the number of intercepted communications, and a statement demonstrating the progress of the investigation and "the need for continued interception." Cal. Penal Code § 629.60.

Courts are instructed to evaluate a wiretap's necessity requirement "in a practical and commonsense fashion . . . ." *United States v. Bailey*, 607 F.2d 237, 241 (9th Cir. 1979). "[T]he mere attainment of some degree of success during law enforcement's use of traditional investigative methods does not alone serve to extinguish the need for a wiretap." *United States v. Bennett*, 219 F.3d 1117, 1122 (9th Cir. 2000).

The Court finds that the informant's statements to law enforcement on May 11, 2011, and thereafter, did not terminate the necessity for the wiretaps. As an initial matter, defendants do not argue

---

[1] Because of the continuing protective order in this case, the Court shall refer to this individual only as an "informant."

7

that the informant's statements should have been included in the initial wiretap application, given that the informant did not speak to law enforcement until May 11, 2011, at least one week after the second version of the 11-01 wiretap was signed by the superior court judges. Instead, defendants contend that law enforcement should have informed the judge about the details of the informant's statements in their interim reports, and told the judge that, because of the informant's statements, the wiretaps were no longer necessary.

The evidence currently before the Court supports the conclusion that, while the informant's statements were helpful to the investigation, they were not so comprehensive or detailed as to terminate the necessity for the wiretaps. The informant was not a percipient witness at either shooting, and instead was able to pass on to law enforcement only second-hand information regarding the individuals present. The informant also demonstrated unwillingness to assist in the investigation, even after the initial May 11, 2011 contact with law enforcement. Additionally, the interim reports included information regarding the informant's contacts with law enforcement for the issuing judge's consideration. Evaluating necessity "in a practical and commonsense fashion," the Court concludes that the informant's statements did not terminate the necessity for the wiretaps.

Accordingly, to the extent defendants rely on this supposed violation as a basis for suppression, the motion is DENIED.

## CONCLUSION

For the foregoing reasons and for good cause shown, and on the basis of the record before it, the Court hereby DENIES defendants' motion to suppress wiretap evidence. This Order resolves Docket No. 1034.

**IT IS SO ORDERED.**

Dated: June 23, 2014

SUSAN ILLSTON
UNITED STATES DISTRICT JUDGE

8