LINDA FULLERTON, 83444
PAUL FEUERWERKER, 203616
54 Railroad Avenue
Point Richmond, CA 94801
510-232-4000 (P)
510-237-2898

Attorney for Defendant
ARMANDO ACOSTA

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>vs.<br><br>ARMANDO ACOSTA,<br><br>                    Defendant | Case No.:  12-CR-00119 SI<br><br>DEFENDANT'S SENTENCING MEMORANDUM |

1

## I.   INTRODUCTION

Armando Acosta was convicted after a jury trial of Count 1:  Racketeering Conspiracy, Count 19:  Accessory after the Fact to Murder, Count 20:  Conspiracy to Obstruct Justice and Count 21:  Obstruction of Justice.  He was acquitted of Count 2:  Conspiracy to Commit Murder in Aid of Racketeering, Count 3:  Conspiracy to Commit Assault with a Dangerous Weapon in Aid of Racketeering, Count 4:  Use/Possession of Firearm in Furtherance of Crime of Violence Count 22:  Destruction of Evidence and the special allegations to Count 1, that the objectives of the enterprise included murder and/or conspiracy to murder.

Armando Acosta asks this court for a sentence of 48 months.  This sentence would be "sufficient but no greater than necessary."  18 U.S.C. §3553.  Mr. Acosta will discuss the factors supporting that request later in this brief.

## II.   OBJECTIONS TO THE FINAL PRE SENTENCE REPORT

Mr. Acosta has multiple objections to the P.S.R. beginning with probation's sources for the collection of information for this report.  Mr. Lillian asked for, and was given, transcripts of Mr. Acosta's testimony.   I am informed and believe that Mr. Lillian also reviewed the prosecution's closing arguments and, per his report, he met with the AUSA's who litigated this case for their input.  Although the defense volunteered to provide any and all information that might be helpful, probation never again contacted anyone involved with the defense and appears to have relied heavily on the prosecutions view of the case.

As the Court heard all of the evidence in this lengthy trial, we have decided not to summarize all of the evidence.  We will, however, address many of the areas raised by probation which we believe are not supported by the evidence, or areas with which we have other objections.

### A. Nuestra Familia

Paragraphs 52 through 57, entitled Overview of Nuestra Familia, lays out the history of the two major Latino prison gangs, Nuestra Familia and The Mexican Mafia. Although the general history is accurate, the inclusion in Mr. Acosta's P.S.R. is irrelevant and prejudicial. Throughout Mr. Acosta's trial, much testimony was given as to how one joins the ranks of the Norteno's. No evidence suggested that Armando Acosta ever became, or attempted to become a Norteno. There was also evidence that there was never a Norteno regiment in San Mateo County, thus making the entire discussion of the NF irrelevant. There is also no evidence that Armando Acosta pledged his allegiance to the NF nor abided by its rules and structure. Therefore, Mr. Acosta asks that the court delete this section of the report as irrelevant and prejudicial.

### B. 500 Block/C Street and the Racketeering Enterprise

Mr. Acosta acknowledges that 500 Block existed, and that he joined when he was 14 years old. However, although there was evidence that there were tensions between some members of 500 Block and Cypress Park Locos, the two factions were not involved with violence between each other, except for the occasional fist fight. Before December 22, 2010 there were no other instances of violence, as probation alleges in paragraph 58 and 61.

Probation alleges multiple purposes of 500 Block, including murder, attempted murder, intimidation, assaults, threats and other violent and criminal behaviors. The government limited the special findings by the jury to murder and conspiracy to murder, both of which Mr. Acosta was acquitted of by the jury. This Court will therefore have to determine the underlying RICO predicate offenses. While the jury found Mr. Acosta guilty of a generic RICO conspiracy count, they acquitted him of conspiracy to murder, the conspiracy to commit assault with a deadly

weapon, the use/possession of a firearm in furtherance of a crime of violence, as well as the two special findings. Thus, probation's rendition of the relationship of 500 Block and CPL, as well as his purported purposes of 500 Block, is not supported by the evidence at trial nor by the jury verdicts.

### C. Facts as to Armando Acosta

Much of the evidence against Mr. Acosta was in the form of uncorroborated witness testimony from cooperating witnesses. That uncorroborated testimony often was inconsistent with other government witness's testimony, and was frequently inconsistent with versions told by the same witness at different times, and even between one part of a witnesses testimony and another. The verdicts of the jury can be interpreted as rejecting witness accounts that were not corroborated with other information. Areas in the probation report either misstate the evidence, as Mr. Acosta understands it, or makes conclusions that do not comport with the evidence as presented at trial. Mr. Acosta will respond to some of those areas.

Probation alleges in paragraph 63 that Armando Acosta agreed that a conspirator would commit at least two acts of racketeering in the conduct of the affairs of the gang, including multiple acts involving murder and also that a member of 500 Block/C Street gang would kill members of rival gangs and those individuals who betrayed 500 Block or cooperated with police. Nowhere in his testimony did Armando Acosta say anything like that. He agreed with the prosecution that Norteno's and Sureno's are enemies and would fight and attack each other with guns, which is the history of the two gangs. This was clearly stated by other prosecution witnesses, such as Todd Tonnochy and Shane Bowman (who, unlike Mr. Acosta, seemed to agree with that practice). Mr. Acosta did not say that 500 Block or C Street members would act in such a manner, and in fact he testified that a Northern jail rule is that in jail, a Southerner

would be attacked if he was in contact with a Northerner.  Mr. Acosta specifically testified that there is no such rule if a Northerner and Southerner cross paths outside of custody.  Mr. Acosta never testified that 500 Block/C Street would kill members of rival gangs, nor is there any evidence that any member of 500 Block or C Street had been involved in any homicide before December 22, 2010.

Although many allegations were made against Mr. Acosta, one must look at the evidence as a whole, not just any uncorroborated statement made by a cooperating witness.  For example, in paragraph 63 Mr. Lillian wrote that Mr. Acosta sold methamphetamine, cocaine, marijuana and Ecstasy between 1996 and 2004.  Mr. Acosta admitted selling methamphetamine for about six months when he was 18 years old.  There is no credible evidence that he did anything more than that, and a look at his history of arrests, searches of his home and cars, and interactions with law enforcement gives no indication that he possessed drugs, money, paraphernalia etc. which would suggests a history of drug dealing.

A troubling aspect of the report is the apparent conclusion by Mr. Lillian that Mr. Acosta was untruthful when he stated that he had phased out of the gang.  A valid interpretation of the jury's verdict is that they found that 500 Block met the definition of a RICO criminal enterprise which spanned the years from the mid 2000's onward, and that Mr. Acosta, through his own admission, was a member during the early years that the government alleged the conspiracy covered.  However, it appears that the jury rejected the arguments that Armando Acosta was involved with acts of violence, or that the enterprise, at the time of his membership, included crimes of violence.

It was clear that Armando Acosta was an active 500 Block member from age 14 through 18.  At age 19, he moved to Sacramento with his girlfriend Leilani, and went to American River

College.  See Exhibit A attached thereto.  When he and Leilani broke up, he briefly went back to using methamphetamine and hanging out on weekends with his 500 Block friends.  That resulted in him losing his employment, and he thereafter quit his weekend excursion with 500 Block.  He went back to Sacramento, got his HVAC certificate and began working for One Hour Heat and Air Conditioning.  When Erica became pregnant, they moved back to the Bay Area and he transferred jobs to Temperature Perfections Inc. in Fremont.  In November of 2007, Mr. Acosta's beloved grandfather died and the following month his cousin who was just a month older than him, and with whom he was close, lost his battle with cancer.  Mr. Acosta took the death hard.  He began drinking and using again, although not with his 500 Block friends.  He got a domestic violence charge against Erica Huerta, received 13 days in jail, and lost his job.  He then worked for Mike Ortiz, Sr., until he violated probation by possessing alcohol and went back to jail.

During this period he applied to the Army, and was working at getting waivers from his probation.  He also was applying to the sheet metal union.  After his probation violation for possession of alcohol, he was admitted to the union as an apprentice.  He was highly respected at his job, was working 40 a week and overtime when available.  On the weekends he was taking classes to advance in his apprenticeship, which he was doing successfully.  By all accounts he was a devoted father to his two children.  He maintained a close relationship with Mikey Ortiz, who was no longer a 500 Block member.  He maintained minimal social contact with the young men he grew up around.

The totalities of Mr. Acosta's efforts are, I believe, more significant than having his Nickle tattoo touched up.

6

### D.  December 18, 2010

Probation's rendition in paragraph 64 of the facts relating to the December 18, 2010 shooting by Joey Ortiz, into a car containing at least some Sureno's, has several flaws.  Although Magali Flores testified that Armando Acosta had said "scraps" to Joey Ortiz, the quality of her testimony on that issue lacked credibility and was uncorroborated.  She could never give the same fact pattern of how this "scraps" comment was made, not just from one meeting with police or the grand jury to the next, but she could not maintain a single version even during her testimony at trial, despite long hours of preparation with the prosecutors.  The allegation that Armando Acosta was aware that Joseph Ortiz had a firearm in the trunk of his vehicle prior to the shooting is also based solely on Ms. Flores, and again lacks credibility.  She testified that Armando Acosta knew about the guns because he had wanted to go to San Francisco in Joey's car, but Joey refused, telling Armando that he was "hot" – that he possessed guns.  The trial evidence showed that Mr. Acosta drove his own car, with four passengers.  Also, it appears, per Ms. Flores, that Joey drove people around with guns in his trunk on a regular basis.

Mr. Acosta and the people from the victims car in fact did keep an eye on each other, but the characterization that he was "staring them down" and that he "posted-up" near the front bumper of their car right before the shooting seems to be a bit subjective.  (The surveillance video shows Mr. Acosta walking away from the open, back passenger door of his car, where a young man from his party was sitting, and going towards the front of the car, just as the victim's car was pulling out.  That version of the position is consistent with Mr. Acosta's testimony that he was waiting for the last individual to get out and pay his share for the alcohol.)

Additionally, the conversations between Vince de Leon and Armando Acosta did not directly or indirectly refer to Mr. de Leon being asked "to back up his lie to police", rather Mr.

Acosta told Mr. de Leon that he had given the police Vince's name and telephone number, and that Armando wanted Vince to explain that they had nothing to do with Joey's shooting at the victims. Mr. de Leon was furious about Mr. Acosta giving the police his name and phone number, that he was not getting involved, and it ended their friendship. Additionally, the intercepted wiretap communication that discussed deleting all of his text messages, pictures and anything else that could incriminate him was a text from his mother giving that advice. There is no evidence that he ever acted on that suggestion by his mother.

Finally, the jury acquitted Mr. Acosta of conspiring to commit murder in aid of racketeering as well as conspiracy to commit assault with a dangerous weapon in aid of racketeering.

### E.  Conduct for Counts 19, 20 and 21

Facts matter. There is no testimony or evidence that Armando Acosta was made aware of anyone's participation in the triple homicide except for Joseph Ortiz. All witness testimony and phone intercepts dealt with Joey Ortiz, not Victor Flores, Justin Whipple nor Benjamin Campos-Gonzalez, who as the court knows, was acquitted of any participation in the triple homicide. As to the text message sent by Armando Acosta on December 22, 2010 at 8:24 pm (the text messages are recorded on Pacific time, but occur on Central time), that text says "Scraps" not "it was the scraps that did it". This text is being used as evidence of "perjury" by Mr. Acosta, who testified that he does not use the term scrap. This one word, in a one work text with no text messages to give it context, is being relied upon by both the prosecution and probation to signify Mr. Acosta's dishonesty. However, while cross examining Mr. Acosta, Mr. Meyer never asked Mr. Acosta to explain that one word text. As described in the defense closing, when looking at

the phone calls from various numbers, it is obvious that Mr. Acosta was quoting what someone had told him in the phone call moments before the text was sent.

Through the trial and the motions thereafter, the extent of Mr. Acosta's post homicide conduct is clear – he brought Mikey Ortiz to Joey Ortiz's location; he lied to the police about his knowledge of the homicides, he originally denied his presence at the liquor store on December 18, 2010; he lied about his whereabouts on the night of the homicides, and he suggested the possible involvement by Sureno's and/or West Park Loco's in the homicides, knowing that was not true; he remained at Luis Rodriguez's apartment on the night of December 22, once the police were in the area and he agreed with Michael Ortiz, Sr. in a phone call after Joey's apprehension in Mexico, not to speak to the police about Joseph Ortiz. (The inclusion of the pre-homicide phone call by Armando to Joey informing him that there were CPL gang members in the park with bats looking for a C Street kid is irrelevant to the charges of the crimes which occurred after the homicides. It's only relevance would be if the jury found that Mr. Acosta made that call to Joey Ortiz as a gang member, expecting a violent reaction in response to that information. Clearly the jury's verdicts indicated that they did not interpret the call that way).

## F.  Probation's Conclusion

In paragraph 69 Mr. Lillian concluded that Armando Acosta's criminal activity included an implicit agreement to participate in violent acts, and to help fellow gang members after the crimes. As noted earlier, the only assistance Mr. Acosta gave was to Joseph Ortiz, the brother of his best friend, the son of parents who had been very good to Armando, and to a man that Armando had known since Joey was about 7 or 8 years old. It is more likely that the assistance came from a long term family relationship rather than from Joseph Ortiz's gang affiliations.

9

Mr. Lillian further concluded that the acts of December 18 were foreseeable acts and that the shooting occurred in furtherance of jointly undertaken criminal activity. Based on that, he has considered the attempted murders as part of Mr. Acosta's relevant conduct. The jury verdicts do not reflect that assumption. Mr. Acosta was acquitted of all acts of violence. In addition to the verdicts, the nature of Mr. Acosta's history shows that he has not been involved in acts of violence beyond first fights. It also ignores the history of Mr. Ortiz. No one has ever claimed that Mr. Ortiz had shot anyone, shot at anyone, or had been involved with incidents where anyone had been shot, or shot at, prior to December 18, 2010. To jump to the conclusion that it was foreseeable that Mr. Ortiz would, for the first time in his history, shoot at a car full of people who had done nothing that warranted such violence, ignores the facts and history known by Mr. Acosta at the time. This event was not foreseeable.

## G.  Adjustment for Obstruction of Justice

In paragraph 72 probation attempts to enhance Mr. Acosta's sentence based on alleged obstruction of justice. He bases this adjustment on alleged materially false testimony that Mr. Acosta phased out of the gang. He concludes that this is false because in 2011 he obtained a gang tattoo. There was no evidence of Armando getting a gang tattoo in 2011, however he did have a gang tattoo touched up in 2008 or 2011. Additionally probation relied upon the evidence that Armando claims to be a Northerner when taken into custody. There was a significant amount of testimony that declaring yourself a Northerner in custody is for your own safety, as well as the safety of the institution staff, as one's history can result in jail assaults, even if one has phased out. The only other option for former Northerners is to claim that one has "dropped out", thus guaranteeing that one will be held in administration segregation for the whole term of incarceration. Further alleged evidence of materially false testimony is that Armando testified he

10

did not use the word scrap, yet had that word in a text that he sent.  This has previously been discussed.

The final stated reason to enhance Mr. Acosta based on obstruction of justice is that he "tried to persuade Vince de Leon to back up his lie to the police" that no one in his group was involved in the December 18th shooting, (which is true) and allegedly to say that they did not know who did the shooting.  Nowhere in the evidence did Armando ask Vince to say that they did not know who did the shooting, in fact Armando had implied during his police interview that he knew who did the shooting and "what do you expect from me".  None of these factors show obstruction of justice and should not be used to enhance Mr. Acosta's sentence.

**III.     A Sentence of Forty Eight Month is Sufficient But Not Greater than Necessary**

**A. Guideline Range**

**Count 1:  Racketeering Conspiracy:**

**Base Offense Level:**  Because the jury acquitted Mr. Acosta of belonging to a racketeering conspiracy that included murder, or attempted murder, as well as all other crimes of violence, and because those verdicts were consistent with the evidence, Mr. Acosta's offense level should be 19.  Although there is case law that would permit the court to re-weigh the evidence against Mr. Acosta to consider acquitted conduct as relevant conduct for sentencing, Mr. Acosta urges the court not to increase his sentence based on conduct that the jury specifically acquitted him of. Mr. Acosta joins in the arguments set forth in Mr. Campos-Gonzalez's sentencing memorandum which lays out the legal arguments against such a finding.  The jury listened to months of evidence, they deliberated for several days, and they came out with well thought out and legally sound verdicts.  That should be honored in the sentencing of Mr. Acosta.                    **19**

**Adjustment for Obstruction of Justice**

Under USSG §3C1.1 note number 7, if the defendant is convicted of certain crimes, including obstruction of justice and accessory after the fact, this adjustment does not apply unless a significant further obstruction occurs. There are no further obstructions. Therefore, there should be no two point increase for obstruction justice.                                  **0**

**Acceptance for Responsibility:** Mr. Acosta was willing to plead to Count One, and in fact offered to plead to Count One. He was not willing to plead to Count One as a RICO conspiracy to commit murder, which the prosecution insisted on. He was not willing to plead to that, because it is not true. The jury agreed. As the prosecution controls whether a defendant can plead to a lesser charge, the defendant cannot be punished because the prosecution turned down an offered plea agreement, and then the jury ultimately agrees with the defendant. Therefore, under USSG 3E1.1, he should be given a 2 point reduction for his acceptance of responsibility.

**-2**

**Adjusted Offense Level**                                                              **17**

**Count Group 2:  Accessory After the Fact to Murder**

**Base Offense Level:**  The defense agrees that the adjusted offense level is 30          **30**

**Adjustment for Obstruction of Justice:**  Based on the argument put forth under Count One, Mr. Acosta should not have an increase for obstruction of justice.                          **0**

**Acceptance of Responsibility:**  For the reasons stated above, Mr. Acosta should be allowed a two point reduction for early acceptance of responsibility.                                    **-2**

**Multiple Count Adjustment:**  The multiple count adjustment should show Group #1 with an adjusted offense level of 19 and Group #2 with an adjusted offense level of 30. There is no

increase in units for groups that are 9 or more levels less serious, therefore, there is no increase in the offense level.

**Total Offense Level**                                                                                      **28**

Although Mr. Acosta has a criminal conviction score of 8, with 2 points because he was on probation in Alameda County, thus putting him in Criminal History Category V, the defense asks this court to reduce his Criminal History Category to IV.  Although Mr. Acosta has accrued several convictions, 7 of his criminal history points are for minor offenses, a 2003 conviction for kicking down part of a fence that had his moniker spray painted on it, a 2005 conviction for driving under the influence, a 2007 offense for driving with a suspended license, a 2007 conviction for causing over $500 of damage to Erica Huerta's car, and a 2007 misdemeanor conviction for possession of dangerous weapon.  (That conviction was apparently packaged with his probation violation and the 10 days were served concurrently.)  The most serious conviction is the domestic violence charge, also relating to Ms. Huerta.  Although Ms. Huerta's original statement to the police sounds extremely serious, when the facts were put forward in court, Mr. Acosta's behavior was criminal, and worth a felony, but was not as Ms. Huerta claimed, thus the sentence was only 13 days.

Prior to Mr. Acosta's current incarceration, his longest sentence has been 9 months at half time, for the probation violation of possessing alcohol in violation of the terms of his probation.

The Sentencing Commission recognized that the raw criminal history score might not be an accurate reflection of the seriousness of a defendant's criminal history.  Therefore, under 4A1.3 the Court can depart below the applicable guideline range.  Mr. Acosta is requesting that of this court in this case.

Therefore, with a total offense level of 28, and a criminal history category level IV, Mr. Acosta's guideline range would be 110-137 months.

### B. Sentencing Guidelines Are Advisory

The Supreme Court held in <u>United States v. Booker</u> (2005) 543 U.S. 220 that the Sentencing Guidelines are advisory. This was clarified and reiterated in <u>Gall v. United States</u> (2007) 552 U.S. 38 and <u>Kimbrough v. United States</u> (2007) 552 U.S. 85. Accordingly, the Guidelines are but one of a number of factors to be considered under §3553(a). Further, they are but one factor among equals, and are entitled to no greater weight than any other. <u>United States v Carty</u> (9th Cir. 2008) 520 F. 3d. 991 (en Banc)(citations omitted) holding that "while the Guidelines are to be respectfully considered, they are one factor among the §3553(a) factors that are to be taken into account in arriving at an appropriate sentence."

Under 18 U.S.C. §3553, the Court is to impose a sentence that is "sufficient, but not greater than necessary" to serve the sentencing goals set forth in that section. Accordingly, the court must consider the guidelines, the circumstances of the offense, the history and characteristics of the defendant, the need to avoid unwarranted sentencing disparities, the need for restitution and then impose a sentence:

(A)  to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.

(B)  to afford adequate deterrence to criminal conduct.

(C)  to protect the public from further crimes of the defendant; and

(D)  to provide the defendant with needed educational and vocational training, medical care, or other correctional treatment in the most effective manner.

14

## IV.    Sentencing Factors

### A.  Mr. Acosta's Character

Armando Acosta has clearly made some horrific decisions in his life, however, with the exception of fist fights, his behavior has been nonviolent.  When his parents divorced, and custody battles raged, Mr. Acosta drifted into the group of young men known as v500 Block. From 14 through 18 he was deeply involved in the lifestyle of the gang, tragically getting addicted to methamphetamine and drifting into petty crime.  After a stint in juvenile hall, where he obtained his GED, he got released and discovered that because he was almost 18 and had his GED, he was not allowed back into high school.  For the next year he used drugs, sold small quantities of drugs, and just hung out with a group of his (mostly) 500 Block friends.  By 19, he realized that his life was being wasted, and he began the process of getting a career, and aiming at stability.  His path has not been without it's back sliding, but he has steadily worked towards a stable and productive life.  As attested to by friends and family, Armando is a kind, giving person who loves his children and is striving to put his past behind him.  See letters attached hereto as Exhibit B.

Armando has found a career that he loves, being a union sheet metal worker, and as testified to by his supervisor, he was a hard worker; he studied hard and was moving up in his apprenticeship.  He was a valued employee, and upon his release from custody, he will be welcome back to Southland, the company where he was working at the time of his arrest.

Armando adores his two children, and was by all accounts, a dedicated and good father. He had daily contact with his children, even when he was separated from their mother.  He had his son involved with sports, and kept his baby girl with him as he coached his son.  He involved them with family, guided and led them, and spent as much time as possible with them.

15

Armando is also strongly supported by his extended family, one of the main indicators of success after incarceration. Family has visited and written while he was incarcerated. They have kept contact with his children, taking them for outings and bringing them to visit him. The family has supported the children while Armando is incarcerated, so that the kids will suffer as little as possible because of their father's absence. See Exhibit C attached hereto.

Substance abuse has been a problem for Armando, and it runs in his family. During the three years that Armando has spent in Glenn Dyer Detention facility, he has consistently attended the DEUCE drug program. In addition to what is reflected in the probation report in paragraph 124, he has now completed 380 days and is the instructor's assistant. See Exhibit D attached hereto.

One of the most troubling parts of Mr. Acosta's past is his turbulent and at time physical relationship with Erica Huerta. Mr. Acosta makes no excuses for his behavior; however, in the course of representing Mr. Acosta, I have learned that Ms. Huerta responded to conflict with equal physical conduct, sometimes as the aggressor. This has been verified by her family. Mr. Acosta has taken seriously his behavior, realizes that part of it has been because of substance abuse, which he is working on in his substance abuse classes. He is also very active in the anger management program provided at the jail. He has attended 160 classes in a program that a student can complete in 24. He is the student assistant in that class also. See Exhibit E attached hereto.

Mr. Acosta has taken the entire criminal process and the trial seriously. He has never lost sight of the tragedy that occurred. He has learned and matured greatly during the last three years, and is doing all that he can to assure that his life will be productive from this day forward. See his letter attached hereto as Exhibit F.

Mr. Acosta is a young man who is determined to succeed with the rest of his life.  He has taken advantage of opportunities while incarcerated, and he has put time and thought into the next phase of his life.  He has a strong support system.

## B.  Criminal Conduct

Many very poor decisions have been made by Mr. Acosta, some resulting in criminal sanctions.  Throughout the turbulent years of his youth, Armando participated in fist fights.  He used drugs, sold a small quantity during a 6 month period while he was 18, and he did not use judgement in the selection of all of his friends.  However, Mr. Acosta did not involve himself in violent behavior.  Trial testimony made clear that 500 Block and Armando Acosta were not involved in heavy violent activities, yet in the last half of December 2010, things rapidly spun out of control, led by Joseph Ortiz and tragedy ensued.  Mr. Acosta was not himself involved with the violence, did not condone the violence and was acquitted of the crimes of violence.  Mr. Acosta has learned from this experience, and does not ever intend to be back before a judge on criminal charges or probation violations.

## C.  Comparative Sentencing Between Mikey Ortiz and Armando Acosta

Probation compares Mr. Acosta's criminal behavior with that of Mikey Ortiz, who pled to a plea agreement which admitted belonging to a racketeering conspiracy that included the agreement to commit murder.  Many of the co-defendant's in this case pled to relatively lengthy criminal sentences rather risk trial.  There is a very real danger for a defendant, facing the charged that were brought against Mr. Acosta, to go to trial.  Mr. Acosta took that risk, because he was innocent of what the prosecution was insisting that he plead to.  The jury agreed with him.  Mr. Ortiz is not now similarly situated, in that he agreed that he belonged to a conspiracy

that included the agreement to commit murder.   Mr. Acosta never did so conspire and was acquitted of that.

The Constitution guarantees a defendant has a right to be presumed innocent until the government proves the defendant guilty of each element of a crime.   The government could not meet their burden, thus Mr. Acosta remains innocent of those crimes of violence.   It is disingenuous to paint a defendant who believed in his innocence enough to go to trial, and who was in fact acquitted of significant crimes, as guilty of those charges for which he was not convicted.   In analyzing Mr. Acosta's criminal culpability, he cannot be compared to those who in fact have significantly different level of responsibility, even if it is because of their own admissions.

### D.  Armando Acosta's Future Plans

Armando Acosta plans first and foremost to reestablish his relationship with his children. He intends to continue his apprenticeship with the sheet metal workers, and ultimately buy a home for himself and his kids.   Mr. Acosta would like to move away from San Mateo County, and if allowed to do so would transfer his supervised release to Reno, where he has family and where he can continue with a union local located in Reno.   If he cannot transfer, he will go back to work with Southland, where his job has been preserved.

Armando has the support of a large extended family, all of whom are willing to assist him in stabilizing his life.   He has matured and grown during the last three years, and has set goals for his reentry.   He genuinely regrets the behavior that got him incarcerated, and does not expect to ever be back in the criminal justice system.

### E.  Supervised Release Terms

Mr. Acosta does not object to the proposed terms of supervised release, except for the no contact order as to Mario Bergren. Mr. Acosta and Mr. Bergren were cell mates for two years, and as Mr. Bergren was acquitted of all charges, it does not seem to advance the goals of probation to deny all contact.

**Conclusion**

For the above reasons, Mr. Acosta asks this court to sentence him to forty eight months.

Date: April 28, 2015

Respectfully submitted

/S/ Linda Fullerton
LINDA FULLERTON
Attorney for Armando Acosta

# EXHIBIT A

OFFICIAL DOCUMENT IS PRINTED ON GREEN GRADIENT PAPER WITH A HEAT SENSITIVE SPOT ON REVERSE SIDE

## American River College Official Transcript

4700 College Oak Drive
Sacramento, CA 95841

Transcript not official without seal and signature



_Robin Neal_
(Registrar)

Name        : Acosta,Armando V
Student ID: 1005828
SSN         : ###-##-7635
Birthdate : 1984-11-01

Print Date : June 23, 2014

- - - - - Beginning of ARC Record - - - - -

### Fall 2004

| Course | Description | Attempted | Earned Grade | Points |
|--------|-------------|-----------|--------------|--------|
| Plan : *Undecided Major* | | | | |
| MATH 100 | Elementary Algebra | 5.00 | 5.00 C | 10.000 |
| MUSM 342 | Recording Studio Techniques | 3.00 | 3.00 A | 12.000 |
| ENGWR 53 | Writing Ctr: Basic Wrtg Skls | 0.50 | 0.00 NC | 0.000 |
| ENGWR 300 | College Composition | 3.00 | 3.00 C | 6.000 |
| TERM GPA : 2.545 | TERM TOTALS : | 11.50 | 11.00 | 28.000 |

CUM GPA : 2.545   CUM TOTALS : 11.50   11.00   28.000
Progress TERM PCT : 4% CUM PCT : 4%
Good Standing

### Spring 2005

| Course | Description | Attempted | Earned Grade | Points |
|--------|-------------|-----------|--------------|--------|
| Plan : *Undecided Major* | | | | |
| MUSM 330 | World Music | 3.00 | 0.00 W | |
| MUSM 110 | The Business of Music | 3.00 | 0.00 W | |
| MUSM 344 | Recording Studio Techniques | 3.00 | 0.00 W | |
| TERM GPA : 0.000 | TERM TOTALS : | 0.00 | 0.00 | 0.000 |

CUM GPA : 2.545   CUM TOTALS : 11.50   11.00   28.000
Progress TERM PCT : 100% CUM PCT : 46%
Good Standing

ARC Career Totals
CUM GPA : 2.545   CUM TOTALS : 11.50   11.00   28.000

----- End of Transcript -----

ACCREDITED BY WESTERN ASSOCIATION OF SCHOOLS AND COLLEGES

# EXHIBIT B

 Southland.

March 17, 2014

RE:    **Armando Acosta**

To whom it may concern,

Armando began his employment with Southland Ind. In the summer of 2010 as a pre-apprentice. That is an entry level position to get your feet wet in our union. He showed good work ethics, never missed work and was always on time. He was always willing to work late to help me out with tasks that my crew needed to be done on short notice. While he was holding a job with us, he was going to night school, and weekend class's to prepare for our Local 104 apprentice entrance exam. The whole crew was very proud of him when he had gotten the results of his hard work and studying, he was now an indentured apprentice.

We completed the project and I saw the value that Armando had to my crew and company so I took him under my guidance and assigned him to work with my foreman. Armando was able to earn the respect of his peers and foreman with the skills that he was learning daily. Armando really prided himself on being at work every day, and was always open to learn new things. Armando had made himself an important part of our crew. With his apprenticeship he knew he had stability in employment and health care, so he began a family.

If Armando were available to work, I would give him employment immediately. He showed me, and all of his co-workers that he has a good future with a career in local 104. Being back to work would help him do what most men strive to do with a family, be a good provider for them.

Sincerely,

**Jaime Gonzalez**
**Sheet Metal General Foreman**

southlandind.com          Southland Industries          1.800.613.6240
                          33225 Western Avenue          | P +1.510.477.3300
                          Union City, CA 94587          | F +1.510.475.9080

February 10, 2015

To Whom It May Concern:

I am writing to you on behalf of Armando Acosta, my cousin. Armando and I are just one month apart in age and spent our entire childhood together. Armando's teenage years were filled with social and emotional hardships and we did not spend much time together in these years. As he matured with the birth of his two children, we re-connected. Armando and I shared an apartment together in 2006, and he later resided with my parents (Fran and Steve Townsend) in Pacifica. We had regular contact up until his incarceration.

For seven years I served as an Investigative Manager with Preferred Investigations and Consulting Services, responsible for conducting law enforcement and public safety background investigations on behalf of more than twenty five police departments and public safety agencies in the Bay Area. I am currently a contracted Investigation Consultant for the same company, as well as a Law Enforcement Transcriptionist. I also possess a Bachelor's Degree in Criminal Justice.

Although my clientele is quite different than yours, from my experience conducting character reference interviews on a daily basis, I understand that these reviews often paint an immaculate image, and contain positive statements that are often superseded by negatives brought about by the applicant's own actions. It is not my intention to do this. Rather, I state only what I genuinely believe to be true and pertinent. It is my hope that you will sincerely consider my statements and that you will impose the minimum possible sentence when considering Armando Acosta.

Please consider Armando and his humanness. He is a parent. He ensures the basic needs of his two children are always met. He takes pride in their well being. He is not a perfect parent, but he is a strong presence in his children's lives. In the time that Armando has been incarcerated I have spent a considerable amount of time with his children, Armando Jr. and Mila (Camilla). My three year old daughter adores them and has "play dates" with them when they are in the care of my mother and father (Fran & Steve Townsend), or their grandparents (Eric Acosta & Monica Bruce). They are brave and resilient children, and I am so proud of them, though the emotional toll that Armando's prolonged incarceration is taking on them is very apparent. Armando Jr. has confided in me, my husband (Joseph), and my brother (Jordan Townsend) the sadness that surrounds his father's incarceration, how he misses him, and how he is worried. It is heart wrenching to see such a young person have to bear these kinds of adult emotions.

Armando's children's mother, Erika, is completely overwhelmed by the responsibilities of her life and motherhood. This has resulted in zero consistency in Armando Jr. and Mila's lives. They have moved several times. When their mother becomes overwhelmed (which happens frequently), their care is taken over by their grandfather, their aunt, and even my mother and father, sometimes for weeks at a time. This means they don't have access to their toys, clothes, or other belongings. They are forced to just adapt. They do

not have one reigning authority in their lives, and rules and routines are not consistent. They are without a sense of trust, and know their mother can be unreliable.

I believe Armando's prolonged incarceration is particularly impacting his son's emotional health, self confidence, concept of family, and impression of authority. As a judge you are well aware of the risk factors for gang involvement or gang associations in adolescence, which include family breakdown, family instability, absence of a biological parent, and living in a low income neighborhood (where gang activity is more likely). I fear that the longer Armando is incarcerated and absent from his family, the more susceptible Armando Jr. will be to gang association and other negative influences in his community. A terrible cycle will only be repeating. Armando is approaching very formative years, and he needs his father's presence.

I believe it is also well known that the longer an offender's sentence, the less chance he will have to become a productive member of society. When given a second act, I am certain Armando will not repeat the first one. I have regular correspondence with him. Before his incarceration, Armando was working hard to get his life together, which included a stable, safe residence, a career with opportunity to advance and allowed him to provide financially for his family, spending his free time engaged in athletic activities to improve his well being, and coaching his son's teams. A lesser sentence will allow him to return to the community, not to the life he was putting behind him, but to the new one he was building. It is important for you to know that I support Armando both pre and post trial, and will continue to support him upon his release.

Thank you for taking my thoughts into consideration. Please feel free to contact me if you have any questions.

Sincerely,


Amy Compani
25096 2nd Street
Hayward, CA, 94541
(650)296-9420
amycompani@gmail.com

02/20/2015

To whom it may concern,

My name is Christina Mayorga; I am the aunt of Armando Acosta's son and daughter. I have known Armando now for over 10 years. I just wanted to let the courts know what kind of person I have seen Armando as. He has been a devoted father who I have seen take my nephew to all his sporting events and karate practices. He has become a big part of our family always has been family orientated and always has been respectful. It's been almost 3 years my niece and nephew have been without their father and it has been very hard especially for my nephew. Armando was always the one to keep his son active in sports and helping with homework. Also for the record Armando is friends with my brother Gonzalo Mayorga who is known to be friends with victims from the shooting. Armando even attended my brother's daughter's birthday with people from CPL (Cypress Park) there and no problem has ever accrued. I understand at some point in our lives we make wrong decisions but seeing Armando through these years and especially after my nephew was born I saw him become a great father, person and all around good man that held a great job and could always be counted on. I ask the court to take his kids into consideration they really need their dad out here with them, my sister is having a hard time raising them. He missed more than half of his daughter's life already being in there for almost 3 years. My niece and nephew lost their dad saw my mom pass away from cancer and other damaging things all in a matter of 2 ½ years. Having their dad home would change their life for the better.


Thank you,

Christina Mayorga

December 3, 2014


Patricia DeNarde
831 Walnut Avenue
Burlingame, California 94010

Honorable Senior District Court Judge Susan Illston
United States District Court of California
450 Golden Gate Avenue
San Francisco, California 94102

Dear Judge Illston,

My name is Patricia DeNarde and I am writing to you relative to the case before you regarding Armando Acosta.

I am not a relative of Armando's, but I was a dear friend of his late Grandmother Beatrice. My history with Beatrice and this family goes back forty-five years. I do consider myself "family" and I am grateful to be accepted by them as such.   I was extremely close to Beatrice, her children and grandchildren. I know that Beatrice loved this boy so very much, and I would be remiss as her friend if I did not stand up for him at this difficult time in his life. He was a wonderful and attentive grandson to Beatrice and I witnessed first hand how caring he was towards his grandmother especially when her health was failing. He regularly visited and made sure that she was well taken care of. If she needed  anything or something needed to be repaired around the house he was the first to remedy it. He was at her bedside when she passed and he was devastated.

Your Honor, by way of a little background on me, I wish to mention that I am a former employee of the Federal Bureau of Investigation as support staff in the New York and San Francisco Offices from 1955 to 1961.  That experience of being a part of the Bureau family, although over sixty years ago, to this day makes me indeed proud. And as such have the greatest respect for the law and law enforcement.

I have known Armando all of his life.  I watched him grow up and he was an exceptionally good kid, but who unfortunately as a very young man made some really poor choices.  I and his family were extremely happy that as time passed and maturity kicked in, that he began to divorce himself from the undesirable people and negative influences in his past so that he could lead a positive and productive life.

He became a more responsible adult.  He became a Dad and he is a devoted and caring Dad to Armando and Camilla. He misses them terribly and they miss

and need him. He became employed in construction at a job that he loves that has great potential for his future.  He has worked hard towards turning his life around and improving his life in all respects so that he and his kids can have a loving and normal life. He's also has had these past two and a half years of incarceration to reflect on his past actions, I am sure, with regret and contrition.  I am confident he will be capable of making positive changes in his future if given the chance.  Please give him and his children that opportunity.

Armando is a good man who took a wrong turn and made a very bad mistake in his youth.  However, he has a large strong family who loves him and will support and be there for him and his children every step of the way.  His family and I respectfully ask for your compassion and leniency in your decision.

Sincerely,

*Patricia De Narde*

Patricia DeNarde

March 11, 2015

To whom it may concern:

My name is **Genevieve Ortega**; I have been a close personal friend of Armando Acosta for over twenty-five years. I am writing this letter to attest to the character of a dear friend who I know as a hard working, dedicated family man. The Armando Acosta I know is a sincere and respectful young man who has consistently striven throughout his life to better himself in order to provide for his two small children Armando and Camila. He is a young man who can still contribute to society in a positive manner in spite of his current transgressions. I respectfully ask you your honor to factor in these numerous attributes that Armando possesses when you render your decision.

Respectfully Yours; Genevieve Ortega

February 12, 2015

To whom it may concern:

I have known Armando Acosta since 1996 and married his mother in 1998.

Armando's teenage years were undoubtedly challenging for him and our family. He was headstrong and did not make the best decisions. However, in watching him grow up, there were many instances where I saw his compassion, his desire to succeed and his strong belief in doing what was right.

As Armando matured he made better decisions and his path in life became more purposeful. As a young adult he found steady work in construction and began to distance himself from many of the poor decisions he had made a few years before. He attended trade school and completed an HVAC program. He also began to start a family. I truly believe he had put his past behind when he landed job as HVAC apprentice with the local sheet metal union. It was a great job and he had to compete with many, many others to win the position. This job gave him a purpose and a path to a successful and happy life.

While I do not have a complete view of all the events or details of the crimes he is accused of or the subsequent legal process, I do know that the last few years have been extremely painful to him and his family. He has great regret and sorrow for the events which transpired. He has been thoroughly and completely punished. Any further time detained for Armando will benefit no one and further delay the healing process for him and our family. If ever there was a time for compassion, this is it.

Please release Armando on the time he has served and let him begin the process of rebuilding his life and reuniting with his family.

Sincerely,

James Bruce

Date:   March 24, 2014

To whom it may concern:

I am writing in regard to your client Armando Acosta.  I have known Armando since his birth. I have been a part of his life, as well as his children's lives, always. I have seen Armando grow into a wonderful father since the birth of his children. I know that he is the main provider for his family both financially as well as being their main care giver. Armando always was caring for his children, making sure they were clothed, clean and fed well balanced meals. He also had his son enrolled in local community sports programs such as AYSO Soccer and T-Ball. He made sure they were at practices and games on time. He always brought his children to functions where we could all gather and enjoy one another. I feel that Armando is very much needed to be an active participant again in his children's lives. I hope this letter helps you see that he is loved, missed and very much needed in his family's lives.

Sincerely,

Kami Giuliani

Date:   March 24, 2014


To whom it may concern:


I am writing in regards to your client Armando Acosta.  His Grandparents lived next door to us for over 30 years. I have known and loved him since his birth. He has been an exemplary father to both his children and is much needed in the rearing of his children. To me, it seems that nothing will be gained by his further incarceration. Armando has been here many times over the years and knows he is always welcome. I certainly don't see him as a danger to anyone and he has an occupation so he could return to that and be able to support his children.


Sincerely,


Sue Poncia

February 10, 2015

To Whom It May Concern:

My name is Fran Townsend. Armando Acosta is my husband's cousin's son. Armando and my daughter Amy are only a few months apart in age and spent many of their childhood days together. During Armando's high school years, things started to take a different path for him. His life in a separated family environment and going from catholic high school to public school seemed to take a toll on him over the years. He made bad decisions that would haunt him for years to come and then some.

When Armando became a father, his attitude shifted to family life. He now had children that were dependent on him. He took that very seriously. With no college education, Armando took jobs that were available to him. He finally got into the Sheet Metal Union and started to thrive. He did well and his employer sent him to special classes for his trade. He was very proud of himself and new that he could produce something good for himself and his children.

Armando lived with our family for a period of time. His kids would come and stay, he was a great dad; Always participating in his children's activities. Armando loved coaching his son, Armando Jr., sports' team. With work and his kids, Armando's time was filled.

From the first day of Armando's incarceration until now, Armando's children's lives have been filled with no stability. Even with all the family help, it has been very rough on the children. It is very sad and scary to see his children on a path of the unknown. Armando's past has been filled with bad decisions and bad judgments, but it has also been filled with a window that showed him how life could be with a stable job and life with his children. It was filled with hope for a time. I do believe that Armando has good to offer and I hope that he someday gets the chance to show it. I pray that HOPE is returned to Armando with a minimum sentence so he may start to live.

Sincerely,

Fran Townsend
8 Banff Way
Pacifica, CA, 94044

February 10, 2015

To Whom It May Concern:

Armando Acosta is my cousin; he's been in my life since I was born. He is about seven years older then me, and has always been a role model through out my childhood. I have never thought of Armando as a bad person. I know Armando was trying to turn his life around years before he got arrested. I am a Corporal in the United States Army, I've been through one combat tour to Afghanistan for twelve months. I owe some credit to Armando for my choice to join the Military. Armando and I went through the enlistment process around the same time. He would have done amazing things in the Army if he just had a chance to prove himself. It really disappointed Armando when he found out that he wasn't going to be able to enlist. Even though Armando didn't make it into the Army, he still continued to try to change his life and play an active role in his kids lives. He found a steady job in the construction industry, and still found time to be a coach for his son's baseball team. I believe Armando was making a very good attempt at separating himself from the life that he use to live, to the life he needed to live for his kids to have a better future.

Armando has two kids, Armando Jr. and Camila who are cared for by Erica Huerta. Camila hasn't really been affected so far by Armando's incarceration except for the fact that she does not have a fatherly role in her life. Armando Jr. on the other hand has been affected greatly by his father's incarceration. I've only been back home for short periods of time due to my military service, but the few weeks that I'm home I make it a priority to spend as much time possible with those kids. I feel that if Armando receives the minimum sentence, he will be able to provide for his family and raise his children. Armando is very resilient, and my hopes are that he serves the minimum sentence and is allowed to come back to the community and provide for his family.

In conclusion, I believe that Armando deserves the minimum sentence because his duty as a father needs to be fulfilled. His commitment to his family out weighs everything, and I truly believe that when Armando is released that he will be a great provider and mentor to his children.


Sincerely,
Jordan Richard Townsend
Point of contact: 650-296-5986  or jordan.r.townsend@us.army.mil
1925 Victory Lane
Junction City, KS 66441

February 10, 2015

To Whom It May Concern:

Armando Acosta is my cousin's son. I am known as "Uncle Steve" to him and to all the children and young adults in our extended family. I have spent most my adult life helping all the children in my family. I helped raise Armando when he was a baby and child, alongside my daughter Amy Townsend (now Compani). Activities we enjoyed together include mountain climbing, swimming, surfing and running. I previously worked with San Mateo County Sheriff's Office, in the Correctional Department.

Armando has always been respectful to me and my children, who are now adults. Armando came to me and my wife and asked us if he could live with us and help him change his life, long before this tragedy took place. Armando lived with us, went to school, work, and took care of his children for over three years. During the investigation conducted pre-trial, my wife and I were asked why we would jeopardize our home and safety to help Armando. We explained that we believed in him to the highest extent, and truly trusted him. We believe if a man is not allowed to re-invent himself and change his life then no house or person would be safe. Armando asked me what to do to change his life, and I told him go to work and take care of your children and remember that everyone pays for bad decisions.

Armando has been accountable for his actions, but his children are the ones that are paying the highest price for his continued incarceration. I plead for you to give Armando the minimum mandatory sentence so that he can continue the work that he started in re-building his life, and that his children can have their father in their lives.

Please don't hesitate to call if you have any questions.

Sincerely,
Stephen Richard Townsend
8 Banff Way
Pacifica, CA, 94044
650-296-0647

Nancy M. Eagen
159 Via Bolsa
San Lorenzo, CA 94580
510-276-4471

February 10, 2015

The Honorable Judge Susan Ilston
c/o Linda Fullerton

I am writing this letter in support of Armando Acosta.  I have known Armando all of his life as I am his mother's first cousin, and we are very close.  I have had the pleasure to spend time with him at family functions such as dinners and camping trips while he was growing up and he was a delight to be around.

But I will focus on Armando as an adult.  I can recall the times at family dinners where he met my husband, telling him about his new job and how excited he was about it.  I think it was a heating/air conditioning construction job.  He was so enthusiastic about it and interested in training, going to school to move up the job ladder.  He has a strong, conscientious work ethic and I recall on a week-night at my house several years ago, he was very responsible and determined to leave early because he had to work the next day.

The reason he was at my house on that week night was that he volunteered to pick up my sister from the airport after a hard day's work and drive her across the Bay to where she needed to be.  Even though this is a small thing, this is another example of how he is always willing to help out his family in any way he could.

I can't think of anyone who is more respectful to the elders than Armando.  When he comes over to my house, he greets the elders first by walking straight over to them, my mom with a big hug and my Dad with a firm handshake like a proper gentleman.  I am very proud of him.

And he loves his children.  I can just imagine how much they miss him.  He worked very hard to take care of them and take them by himself to family get-togethers.  He made sure to teach them manners, properly dressed, cleaned, and fed well.

He Loves his Family.  He also took charge and did a lot of the cooking at our family functions.  I also recall him helping his Aunt tear out an old stove and replace and remodel the kitchen for her.

I am not saying I know everything about Armando.  What I can say, from what I have seen, is that I feel Armando has great potential, is a fine gentleman, an essential member of the family, and I think a bonus to the community.  I am writing this letter because Armando has also always been extremely respectful, caring and supportive of me and our family.

Sincerely,

Nancy M. Eagen

California Correctional Peace Officer N. Monti

February 11, 2015

This letter is regarding Armando Acosta.

To Whom It May Concern:

My name is Officer Monti and I'm a California Correctional Peace Officer of the Department of Corrections and Rehabilitation. I'm writing this letter on behalf of Armando Acosta to give a more in to depth description of his background and character. I currently work in a level IV prison of over 3300 inmates. The majority of the prison population is comprised of inmates who are serving long sentences and those who have proven to be management problems while in prison. Majority of the inmates who are incarcerated at my prison have done violent crimes such as rape and murder. These are people who are a threat and a danger to society. Society is a much safer place by having people such as these incarcerated.

Armando Acosta is nothing like those I have described. He is a wonderful father and provides for his two beautiful children. Armando Acosta has proven to be a reliable employee and hard worker in which his previous employer can verify. He is a person of high values and integrity. Armando Acosta will serve a far better purpose in life and society if given the chance to go home and continue to be a wonderful father and provider to his children. I have not read any evidence that proves that Armando Acosta deserves to be incarcerated like so many others that have done criminal acts. Like many others, including myself, Armando Acosta has not always made the best choices in life. I am fully confident, due to the time spent away from his family, Armando Acosta is truly remorseful for what has transpired.

While being surrounded by thousands of high level offenders day in and day out, I find it difficult to see them as individuals who may be better suited to be on the outside due to the inmates already having sufficient evidence that has proven their guilt. However, the need for me to see each inmate as individuals is far less important than the need for those in law enforcement who get to decide guilty or not guilty. My goal for writing this letter is for the reader to take an extra 10 seconds, look beyond all the paper work that is set before them and see Armando Acosta as a person, parent, and an individual who no longer needs to be incarcerated. It is my professional opinion that Armando Acosta is not a threat, nor a danger to society and ready to return home to his family.

Respectfully yours,

California Correctional Peace
Officer N. Monti

C/o

Antoinette Galindo
2108 Adeline Drive
Burlingame, CA  94010

November 21, 2014

Honorable Senior District Judge Susan Illston
United States District Court of California
450 Golden Gate Avenue
San Francisco, CA 94102

Dear Judge Illston,

By way of introduction my name is Antoinette Galindo and my brother's name is Richard Prieto. I am writing in regards to my nephew Armando Acosta, I am Armando's Aunt and Godmother, for the last 2.5 years my brother and I have gone to visit Armando weekly where he has been detained in federal holding at the Glenn Dyer Detention Center in Oakland, California. My nephew Armando has received tremendous family support and will continue to have all our support.  These past 2.5 years have been a grueling ordeal on our family. Before this incident occurred Armando was steadily employed and aggressively participating in the Apprentice Program with the union.

At his trial his employer testified that Armando was a good worker who never missed work, always punctual and eager to volunteer and accept any overtime work needed.  In addition to his daily work schedule Armando was highly engaged with his son Armando now age 8 and daughter Camilla now age 4 daily routines which included picking them up from afterschool care and daycare, assisted in coaching Armando's baseball and soccer teams, taking Armando to his Martial Arts class and assisting with homework. Armando always made sure the evening ended with making sure the children were fed, bathed and spending quiet family time together, always acknowledging how much he loved his 2 children and teaching them the importance of being kindhearted and courteous to others.

My nephew has made some bad choices in the past and his past has caught up with him.  Armando was making strides in turning his life around for the better although the disconnection from his children and family has taught Armando how important a humble life is and how one should be accountable for his actions.

I would like for you to take into consideration that these past 2.5 years have taught Armando a lesson and that you please consider that his 2 children desperately need him back in their everyday lives. As a father Armando would want nothing but a stable uneventful lifestyle for his children, which he prays he could soon return to by being an upstanding member of the community, providing for his children by being gainfully employed and making a home for Armando & Camilla, in addition to him returning back to his HVAC Apprentice program.

I hope you will consider my plea when making your decision about Armando's future on January 16, 2015.

Sincerely,

Antoinette Galindo

**Tiny Bubbles Daycare**

**Dina Harris, Proprietor**

**33 San Felipe Ave.**

**South San Francisco, CA 94080**

**(650)873-0702**

May 6, 2012

To Whom It May Concern,

My name is Dina Harris and I am a daycare provider in South San Francisco. I currently service Mr. Armando Acosta's children and have done so since September 2011.

In regards to Mr. Acosta, I can only say that my interactions with him since September 2011 have only been positive. He has two small children which I've had the privilege of having under my care and from my observations he's a wonderful father. He's responsible, caring and very polite. His children very obviously adore him and they are the most important thing in his life. Most days he picks them up at the end of the day and from conversations with him and his children he's very involved in taking his son to his extracurricular activities. Mr. Acosta's demeanor when he enters my home is always positive and very respectful.

I understand that at this time Mr. Acosta is in a very volatile situation and although I am not aware of any details of his involvement, I believe that the outcome is crucial not just to his future but his children's as well. On his behalf and that of his family, I pray that all aspects of him as a father and as a person will be taken into consideration when making a judgment against him. Thank you.

Sincerely,

Dina Harris, Daycare Provider





# Bill Grossman's
## School of Kenpo Karate
### 114 Hazelwood Drive, South San Francisco, Ca. 94080
### 650-875-4111

May 4, 2012

To whom it may concern:

Armando Acosta signed his 5 year old son Armando Jr. up for karate lessons in November, 2011. At the dojo, Mr. Acosta is an attentive and involved parent. Unlike some parents that just drop off their child, he always stays to watch his son take his lesson, while caring for his 2 year old daughter, Camila.

He has high discipline standards for his son, both in karate and at school. When Armando Jr. got in trouble at school, he asked that I work with him to impress upon Armando Jr. the importance of behaving at school and at home.

Just last Saturday, father and son came by the dojo to say hello after completing T-ball practice. Mr. Acosta was so proud to tell me that he was one of the team coaches.

Although I have not known Mr. Acosta very long, my experiences have all been positive.

Sincerely,

Professor Pati Grossman
School Owner

January 13, 2015

Dear Honorable Judge Illston

My name is Patricia Recinos.  I have known Armando Acosta since he was born. I have been a very close friend to his mother Mrs. Monica Bruce for over 35 years.  The Armando Acosta I know is a hard working, devoted father to his two small children Armando and Camilla. Armando is a young man who attended Catholic Parochial schools and later successfully completed a HVAC Trade School to better provide for his family.  A person who has always been consistently respectful and polite, not only in his association with me, but with everyone that he comes in contact with.

I ask you to consider these attributes when you review the facts of his case and to factor in his many outstanding personal qualities.

Respectfully Yours,

Patricia Recinos

November 24, 2014

Jaclyn Evangleho
2440 Foxcroft circle
Roseville, CA. 95747

Honorable Senior District Judge Susan Illston
United States District Court of California
450 Golden Gate Avenue
San Francisco, CA. 94102

Re: Armando Acosta

Honorable Judge Illston:

I Jaclyn Evangelho am writing you this letter on behalf of my cousin Armando
Acosta. I have known Armando since he was born and I've spent many holidays
over the years together since I can remember.

Armando has always been a wonderful, funny, smart, high spirited kid who
everyone has enjoyed being around. Armando was an only child so he spent a lot
of time around his cousins and other family members. He has great respect for
his elders and development close relationships with Aunts and Uncles who he
has looked up to for guidance and support. Over the years he has remained
close to family and has had two children.

I've have watched him become a wonderful dad who is very involved with his
children. He has always been committed to providing a loving, nurturing and
stable environment for his children even when times are hard. I know being
apart from his children is heartbreaking for him. He has always been a hard
worker whether it comes to his family or his job. Armando has worked in
construction for a number of years where I know he has been well liked by co-
workers and management. He has never had a problem getting and maintaining a
job. He has always worked hard to succeed in his line of work.

I know Armando has had a lot of time to think about his actions. I think we can
all relate to having friends at some point in our lives that weren't positive
influences and having to make decisions to distance ourselves from them. I know

Armando was aware of these people and their environment which I know he was trying to distance himself and children from. I truly believe with all my heart Armando is a good man and this experience along with being apart from his children has forever changed him.

I ask you with a heavy heart to consider my plea for my cousin Armando and his children. His children (Armando & Camilla) are young and desperately need him in their lives. I know he'll make positive changes given the opportunity.

Respectfully yours,

Jaclyn Evangelho
Armando's cousin

December 2014


Honorable Senior District Judge Susan Illston
United States District Court of California
450 Golden Gate Avenue
San Francisco, CA 94102

Dear Judge,

I understand the judge has my grand nephew's life in your hands, so I thought if I could let you see how I see this young man. My name is Ernestine Townsend, I am 86 years old, and the last living relative of my generation, Armando is my sister's grandson and if there is any way I can help, I want to.

Armando never failed to attend family gatherings as a child to young adulthood and up until the time he went to jail. Children were always included at weddings, baptisms, birthdays, etc. They were taught the minute they saw a relative to kiss and hug them hello. Armando has taught his children to do the same which is a beautiful tradition.

Whatever mistakes Armando made as a teenager were not evident whenever I saw him. When my grandson (22 years old) was killed by an illegal, Armando was with the family; when his cousin Gavin (also 22 yrs) was in the hospital with terminal leukemia, Armando was there visiting until the end.

My sister, idolized Armando. He always visited her, especially when she became ill. He wanted his children to remember their great grandmother.

This November unfortunately, Armando was unable to attend his cousin's funeral who was battling cancer (Jeff Galaviz was a Richmond Police Officer, my other sister's grandson).  We have had so much loss in our family, all too young, it just pains me at the age of 86 to think about losing another nephew. Even though it's not in death Armando will still be removed from our life.

Armando was a hardworking father living a clean life and I am hoping he can resume his life back with our family and his children. We all make mistakes, he has paid for his, please allow him to return home to us.

Respectfully,


Ernestine Townsend

December 2014


Honorable Senior District Judge Susan Illston
United States District Court of California
450 Golden Gate Avenue
San Francisco, CA 94102

Dear Judge,

My name is Christopher Townsend-Dong, I'm 25 and Armando's cousin.
All my life I have looked up to my cousin, I love that he has always been there for me and
around our family.
I've NEVER known the guy the police think he is !!

He has always made time for me, he has always been respectful and a loving cousin who loves
being around all his cousin's. Even though I'm younger he never made me feel like I couldn't
play or hang out with him at my grandma's or any family functions. That means a lot when
you're a little boy.

When I turned 21 my parents took me to Las Vegas and Armando came to celebrate with me,
that also meant a lot to me. Our family is very close and not having him around hurts. I have
lost a lot of my older cousins to cancer. Our family has been through so much and we just want
Armando back home.

You know, I have always thought of myself as a big tough guy for whatever that means the
saying "tough guy" I guess because I'm big and tall that if my cousins needed me to protect
them I'm there for them, I mean I will always be there for my family.

I have to tell you, when I went to see Armando in the Oakland jail I was scared, I never knew
that type of feeling. He truly has changed my life in never wanting to do anything that would
put me in jail. You see in some way he is still there for me.

Hopefully the letters we send will help his case and we will get him home.

Truly,


Christopher Townsend-Dong

HonorableSenior District JudgeSusan Illston
United States Court of California
4550 Golden Gate Ave.
San Francisco CA 94102


Dear Judge Illston:

Im writing this letter on behalf of my nephew Armando Acosta.

My name is Richard Prieto Im his uncle and have been involved in his life in some way or form since childhood. Since our family has never had anyone incarcerated we were devastated at the news that Armando was arrested 2/1/2 yrs ago No one saw this coming. He had a good job he is a terrific father,loved his children to death has many friends and except for the fact his clothing style was different from mine everything about him seemed normal

I decided to visit my nephew at the oakland jail I of course was there to support him but i also needed to know if i would see something that would deter me from wanting to come back. In good conscience regardless of my relationship i could not support someone i didn't believe or was afraid would be involved in any criminal activity.I was prepared for the worst Like i said before this is unchartered waters for our family. Needless to say i never missed a visit with the exception of a few sick days traveling from burlingame to Oakland every week.

What i witnessed when i visited Armando was a young man that was resilient a bit befuddled hopeful optimistic and a calm demeanor that i came to admire greatly as he was acclimating to his new environment . I became so impressed i felt i was getting a lesson on how to deal with adversity.when the subject of his children would come up his face would light up like a Christmas tree, like the one time i actually visited while in the presence of Armandoi jr and camille it was a site to behold as both children were clamoring for a chance to speak to there dad.Shortly after that visit i told my nephew i would never see him jail again then i said" you know why" he looked at me and i looked back at him i said "you love your children too much" iHe smiled broadly

Your honor i admit i want to see him for selfish reasons he is a good person i sincerely believe that and i miss him but his children not only miss him they need him they love there dad and they want to see him home As I've
mentioned earlier i don't want to be a part of anything illegal or associated with

anything criminal now or in the future and if i believed for one second you would ever see him in your courtroom again i wouldn't be writing this

letter 21/2 years has been a long time he has served his time  won't you let him come home


Sincerely

Richard E Prieto

December 2014

Your Honor:

I am writing to you on behalf of Armando Acosta, our family member. My wife, Stephanie and I have known Armando since his birth. Stephanie and Armando's father, Eric are first cousins. Our family is very close, celebrating holidays, birthdays, and other events together, so we had an opportunity to get to see Armando grow up. He has always been respectful, polite, and he truly values family.

In starting his own family, Armando has shown to be a very loving and caring father for his children, Armando Jr. and Mila. To make a better life for his children, Armando enrolled in a trade school to enhance his skills. As a result, he was able to get a full time job in the trades and provide for his family. He was doing well in his employment up until the time of his arrest and incarceration.

Over three years now, Armando has been serving time in an Oakland CA jail and away from his family. With Armando being incarcerated, it has been overwhelming for the children's mother, Erika as she has struggled to be the sole provider. Family members have been lending a hand and are trying to make holidays and birthdays special for the children, but they are suffering, especially Armando Jr. in not having a stable life without his father being present and his immediate family together. We miss Armando being at our family functions especially at Christmas time and we want him home with us again.

I am asking you, your honor to please consider the minimum sentence in this case for Armando, as well as the time that he has already served. He deserves a second chance, but more importantly, his children deserve to grow up with their father in their lives.

Thank you for your time.

Daniel and Stephanie Dong

Grace A. Koutoulas
217 Indio Drive
South San Francisco, CA 94080


October 23, 2014


Honorable Senior District Judge Susan Illston
United States District Court of California
450 Golden Gate Avenue
San Francisco, CA 94102


Dear Honorable Judge Illston,

This letter is regarding Armando Acosta.

My name is Grace Ann Koutoulas, I am Armando's Aunt. I am not only a family member but also a lifelong friend of Armando's.  My nephew is kind, trustworthy and a hardworking-devoted father who loves his 2 children Armando and Camilla immensely.

Armando has always played an active, positive role in his children's everyday lives. He would devote his after work hours picking up Camilla from daycare, feeding the kids, helping Armando with homework, assisting with Armando's baseball team, taking Armando to his martial arts class and spending family time together playing at the park.

From my past personal experience I have witnessed Armando hit a few bumps in the road in his young adulthood, but gladly I've seen Armando mature from a foolharded youngman into a mature, devoted father, worker, nephew and adult.

I, along with Armando am fully aware of what has transpired and knows he's truly remorseful. Over the past 30 months Armando has suffered extensively for his actions, his detachment from Armando and Camilla is despairing.  Armando is a great father and any extended absence would be detrimental to the wellbeing of Armando and Camilla.

I would like to ask you, Judge Illston if you would consider at least the lowest possible sentence so that Armando can go forward with his life and be reunited with his children.

Respectfully yours,

Grace A. Koutoulas

December 1, 2014


Honorable Senior District Judge Susan Illston
United States District Court of California
450 Golden Gate Avenue
San Francisco, CA  94102

Honorable Judge Illston,

I am writing to you on behalf of my nephew, Armando Acosta.  Armando is an intelligent and kind-hearted young man.  He is father to two wonderful children: Armando and Camilla.

I can honestly say that I would never write a letter on my nephew's or any family members' behalf if I didn't whole-heartedly believe that they had the propensity to want to live life as a contributing member of society and provide a caring and nurturing home for their children.  Armando has always demonstrated a deep devotion to his family and children; he has never displayed any acts that made me believe that I'd ever have to write a letter regarding his character.  He truly displays the emotions of a person who is ashamed of their choices and takes accountability for his actions.  As any parent my concern would be for my family and I do believe that Armando is an integral part of Armando and Camilla's life.  These children need their father but mostly he needs them.

If a lesson needed to be learned, make no mistake, Armando has learned his and I expect that he will be a more educated and exemplary father than ever before.  The importance of the family unit has never had more meaning to him than it does now.

My nephew Armando has the capability and yearning to better himself, he has the support and love of all his family and with his children I know that he will be the kind of man that is respected and a mentor to young men and women who find themselves in this situation.

Thank you for your time and consideration with this matter.

Respectfully,

Daniel and (Patricia) Prieto
25 Adams Lane Petaluma CA 94952
707 763-4237  cell 707 241-5916  office 415 206-9479

# EXHIBIT C

Expenses paid by Monica Bruce on behalf of Armando V. Acosta for Armando X. and Camila Acosta

| DATE | PAYEE | AMOUNT | DESCRIPTION |
|---|---|---|---|
| 7/5/2012 | Wilson Center | $90.00 | Summer Soccer Camp 2012 |
| 5/19/2012 | Soccer Registration | $125.00 | Fall Soccer 2012 |
| 9/30/2012 | Happy Hall | $154.70 | Before/After care for Armando Acosta SEP 2012 |
| 10/30/2012 | Happy Hall | $226.78 | Before/After care for Armando Acosta OCT 2012 |
| 11/30/2012 | Happy Hall | $248.22 | Before/After care for Armando Acosta NOV 2012 |
| 12/30/2012 | Happy Hall | $256.49 | Before/After care for Armando Acosta DEC 2012 |
| 1/14/2013 | Baseball Registration | $100.00 | Spring Little league Baseball registration |
| 1/30/2013 | Happy Hall | $218.51 | Before/After care for Armando Acosta JAN 2013 |
| 2/28/2013 | Happy Hall | $642.85 | Before/After care for Armando Acosta FEB 2013 |
| 3/30/2013 | Happy Hall | $606.55 | Before/After care for Armando Acosta MAR 2013 |
| 4/19/2013 | JCPenney | $115.11 | Clothing for kids |
| 4/19/2013 | Macy's | $108.49 | Clothing for kids |
| 4/30/2013 | Happy Hall | $132.67 | Before/After care for Armando Acosta APR 2013 |
| 5/1/2013 | Macy's | $115.43 | Clothing for kids |
| 5/6/2013 | John Clifford | $394.00 | Rent paid on behalf of Erica Huerta |
| 5/30/2013 | Happy Hall | $101.00 | Before/After care for Armando Acosta MAY 2013 |
| 6/17/2013 | Wilson Center | $220.00 | Summer camp axa |
| 6/30/2013 | Happy Hall | $393.53 | Before/After care for Armando Acosta JUN 2013 |
| 7/1/2013 | Wilson Center | $110.00 | Summer camp axa |
| 7/7/2013 | Challenger | $150.00 | Summer Soccer Camp 2013 Pacifica |
| 8/6/2013 | JCPenney | $116.34 | Clothing for kids |
| 9/1/2013 | Happy Hall | $169.00 | Before/After care for Armando Acosta SEP 2013 |
| 9/1/2013 | Happy Hall | $261.25 | Before/After care for Camila Acosta SEP 13 |
| 10/2/2013 | Happy Hall | $259.81 | Before/After care for Armando Acosta OCT 2013 |
| 10/2/2013 | Happy Hall | $497.00 | Before/After care for Camila Acosta OCT 13 |
| 11/2/2013 | Happy Hall | $203.00 | Before/After care for Armando Acosta NOV 2013 |
| 11/2/2013 | Happy Hall | $327.00 | Before/After care for Camila Acosta NOV 13 |
| 11/7/2013 | Christina Mayorga | $200.00 | Disneyland tickets for kids |
| 12/1/2013 | Happy Hall | $139.56 | Before/After care for Armando Acosta DEC 2013 |
| 12/1/2013 | Happy Hall | $342.00 | Before/After care for Camila Acosta DEC 13 |
| 1/1/2014 | Happy Hall | $192.05 | Before/After care for Armando Acosta JAN 2014 |
| 1/1/2014 | Happy Hall | $357.00 | Before/After care for Camila Acosta JAN 14 |
| 1/26/2014 | Public Storage | $291.60 | Payment made on behalf of Erica Huerta for apartment storage |
| 2/1/2014 | Happy Hall | $216.25 | Before/After care for Armando Acosta FEB 2014 |
| 2/1/2014 | Happy Hall | $406.25 | Before/After care for Camila Acosta FEB 14 |
| 4/1/2014 | Happy Hall | $110.56 | Before/After care for Armando Acosta APR 2014 |
| 4/1/2014 | Happy Hall | $357.00 | Before/After care for Camila Acosta APR 14 |
| 5/1/2014 | Happy Hall | $188.02 | Before/After care for Armando Acosta MAY 2014 |
| 5/1/2014 | Happy Hall | $323.46 | Before/After care for Camila Acosta MAY 14 |
| 6/1/2014 | Happy Hall | $209.22 | Before/After care for Armando Acosta JUN 2014 |
| 6/2/2014 | Happy Hall | $355.04 | Before/After care for Camila Acosta JUN 14 |
| 7/7/2014 | Dick's Sporting Goods | $118.75 | Soccer Gear |
| 10/1/2014 | Happy Hall | $108.26 | Before/After care for Camila Acosta OCT 2014 |
| 10/23/2014 | Christina Mayorga | $150.00 | Cash for Erica Huerta (gas, car) |
| 11/1/2014 | Happy Hall | $362.42 | Before/After care for Armando Acosta OCT & NOV 2014 |
| 11/1/2014 | Happy Hall | $110.41 | Before/After care for Camila Acosta for NOV 2014 |
| 11/11/2014 | NCP College of Nursing | $545.00 | Tuition for Erica Huerta (Anatomy & Physiology) |
| 12/1/2014 | Happy Hall | $268.79 | Before/After care for Armando Acosta DEC 2014 |
| 12/30/2014 | Happy Hall | $370.32 | Before/After care for Camila Acosta for DEC 2014 |
| | | $12,064.69 | |

# EXHIBIT D

Tri-Valley Regional Occupation Programs
Correctional Education
2600 Kitty Hawk Road, Suite 117
Livermore, CA 94551
925-551-6697

COURT LETTER—DEUCE

Date _March 30, 2015_

To Whom It May Concern:

This Letter serves to verify that _Armondo Acosta_
PFN: _VIV 540_ is currently enrolled in the Deciding, Educating,
Understanding, Counseling and Evaluating (DEUCE) Program, and has
completed ( _380_ ) days of attendance.

The DEUCE program is _60 days_ of classroom attendance and participation. It
includes several subject areas dealing with substance abuse, anger
management, addiction and life skills. Upon successful completion of the
program, students will be awarded a Certificate.

The DEUCE program is a voluntary alcohol and drug education program based
on the 12-Step format, for inmates at Glenn Dyer Jail and Santa Rita Jail. The
program is administered and taught by the staff of the Tri-Valley Occupational
Programs. The instructors are state certified with Adult Teaching Credentials.

Sincerely,

_Carolyn Arden_

DEUCE Instructor
Carolyn Arden

_Armondo has been_
_in DEUCE for 380_
_days - He is my_
_assistant_

Invalid Without
Embossed Seal

# EXHIBIT E

TRI VALLEY REGIONAL OCCUPATIONAL PROGRAMS
CORRECTIONAL EDUCATION
1040 FLORENCE ROAD, LIVERMORE, CA 94550

**Court Letter—Anger Management**

**Date** _March 30, 2015_

**To Whom It May Concern:**

This letter serves to verify that _Armondo Acosta_
PFN: _ULY 540_ _____ is, or was enrolled in the Anger Management
class and has completed _160_ days of attendance in a 24 day
program.

**The Anger Management Class** is a voluntary program. The objective is to identify high
risk situations, thoughts and behaviors that lead to unhealthy anger. While gaining
emotional stability and increased self awareness, the class incorporates new coping skills
to handle anger/stress and other feelings. The men also develop communication skills to
develop healthy relationships

**The Anger Management Program** is at Glenn E. Dyer Jail in Oakland, California. The
program is administered and taught by the staff of Tri Valley Regional Occupational
Programs, and the instructors are state certificated teachers.

**Sincerely,**

_Carolyn Arden_

**Carolyn Arden, Instructor**

_Armondo is my_
_Student assistant_
_having 160 days in_
_a class you complete_
_in 24 days_

**Invalid Without**
**Embossed Seal**

# EXHIBIT F

Judge Illston,

I would like to take this time to inform the court that throughout this whole ordeal I have always fully acknowledged the severity of the actions that occurred on the nights of the 18th and 22nd of December 2010. I have thought about these incidents daily from the moment they occurred. I understand the tremendous loss the victims and their families had to go through. I was not directly involved with what happened to those young men on the night of Dec. 22nd but still I would like to apologize to those families for there loss. The Christmas season should be a time when families gather together in celebration, not gather in mourning. What happened that night should never have happened. I understand the surviving victims and surviving families lives have been forever altered and will never be the same.

I have always understood the seriousness of this case and never have I taken it lightly. During trial, the opportunity presented itself for me to testify on my own behalf. Im glad I did so and Im glad the court heard my testimony. I have been honest and upfront with the court. But, I am not perfect. I have made mistakes in my life, but I've also learned from them and grew from them. I have made adjustments. I set and reached goals to better myself

and was doing so, successfully, at the time of my arrest. I am a proud father of two and have strived to be a great Dad and positive role model. I consider myself lucky and blessed to have such a loving and supportive family in my corner throughout this whole process. I realize that not everybody is as fortunate, so I am very grateful.

At this point, I would like to thank the court for the time and consideration put into the decision of my sentencing. I understand it to be a lengthy process especially after a lengthy trial. Thank you very much.

Sincerely,

Armando V. Acosta